**UNITED STATES of America, Appellee,**

v.

**David B. LUCIANO, Defendant, Appellant.**

**No. 83–1519.**

United States Court of Appeals, First Circuit.

Argued April 5, 1984.

Decided May 9, 1984.

Joseph J. Machera, Revere, Mass., for defendant, appellant.

Gary C. Crossen, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and BONSAL,* Senior District Judge.

COFFIN, Circuit Judge.

Appellant was convicted by a jury of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The testimony of various witnesses was to the effect that one Smith had been in a noontime conversation with a drug enforcement agent about selling some cocaine; that Smith was shortly to meet his source; that in midafternoon appellant arrived at Smith's home; that they ventured out for a pizza and subsequently separated; that at 6:00 p.m. Smith met appellant at a Sears parking lot in Saugus, entered appellant's black Cadillac, stayed a short while, then returned to his own car and drove to a Burger King parking lot, also in Saugus, to make the prearranged cocaine sale to the drug enforcement agent; that appellant followed Smith and parked nearby; that Smith made delivery of some cocaine to the agent, whereupon both Smith and appellant were arrested.

█ Although the evidence of appellant's involvement is circumstantial, and was characterized as "thin" by the court, there has been no contention on appeal that it was insufficient to support the verdict. The sole issue before us relates to some expressed uncertainty on the part of two jurors. At the most, appellant can be understood as arguing that the fact that the case against him was thin and circumstantial adds weight to his attack on the trial judge's action in the course of polling the jury. Although there are cases where interacting errors have a synergistic effect, *see, e.g., McMillen v. United States*, 386

F.2d 29, 36 (1st Cir.1967), this is not one of them. The district court was doubly right in its comments accompanying the denial of a directed verdict for defendant: the government's case was thin but it was sufficient to go to a jury. And its polling of the jury and subsequent actions were a proper exercise of its discretion.

█ The major issue as to whether or not the jury's verdict was free from coercion concerns the in-court colloquy between the judge and the foreperson of the jury. The scenario is as follows. The foreperson, in response to the court's inquiries, announced that defendant was found not guilty on count 1, charging conspiracy, and guilty on count 2, charging possession with intent to distribute. The foreperson, Ms. Avola, then twice reaffirmed this result in answers to the court's questions. Then a fourth communication took the form of a group affirmative answer to yet another question from the court.

At this juncture defendant's counsel responded affirmatively to a question from the court asking if he wanted the jury polled. The following colloquy ensued:

"THE COURT: I am going to poll you simply by asking each of you if you agree with the verdict as published. This is a procedure which the defendant is entitled to. I will ask each of you individually whether you agree with this verdict.

Ms. Avola, Rhonda D. Avola, do you agree with the verdict of guilty as to Count 2 as charged?

MS. AVOLA: That is with just possession?

THE COURT: No, no, possession with intent to distribute as charged.

Please tell me. It doesn't matter now.

MS. AVOLA: I decided, I don't know—

THE COURT: All right, then, the jury has not reached a unanimous verdict.

---

* Of the Southern District of New York, sitting by designation.

MS. AVOLA: Yes, it's my own personal thing, but, yes, I do, from the things I heard from the other jurors, I do agree with them, yes. I am sorry, I do.

THE COURT: Guilty as charged?

MS. AVOLA: Yes."

The court proceeded to poll the remaining eleven jurors, all of whom simply indicated their agreement with the verdict of guilty. The court pronounced the verdict as recorded. The jury was then discharged. No objection or motion or comment of any kind was forthcoming from defense counsel.[1]

■ Appellant's contention is that the district court either abused its discretion or erred as a matter of law in failing to send the jury back for further deliberations or to discharge it.[2] The cases cited by appellant in which a trial court has been reversed for its actions in polling jurors have all involved jurors who expressed a lingering doubt and judges who, notwithstanding such a representation, persisted in treating the answer as unqualified and hastened to announce a unanimous vote. *Sincox v. United States,* 571 F.2d 876 (5th Cir.1978); *United States v. Edwards,* 469 F.2d 1362 (5th Cir.1972); *United States v. McCoy,* 429 F.2d 739 (D.C.Cir.1970); *Matthews v. United States,* 252 A.2d 505 (D.C.App. 1969). In such cases the judge errs in dominating the juror and counsel fully as much as if he raced to record a verdict, effectually foreclosing any opportunity to poll the jurors. *Miranda v. United States,* 255 F.2d 9 (1st Cir.1958).

■ In the case at bar the court indicated that it intended to follow precisely the teaching of *United States v. Musto,* 540 F.Supp. 318, 339 (D.N.J.1982), that "It is ... wisest to discontinue the poll immediately upon learning that the jury's verdict is not unanimous." It did not engage in any questioning or other conduct that could remotely be deemed coercive. When the foreperson, wavering after several affirmative responses, heard the judge declare that there had not been a unanimous verdict, she immediately set the record straight, not once but no fewer than five times in the course of two sentences. It cannot seriously be urged that this factual situation compelled a mistrial. Nor could it be urged with any more cogency that the judge had to send the jury back for further deliberation; such might well have been far more coercive than the atmosphere that led to the juror's immediate, unprompted, complete and repeated volte face.

Our duty in reviewing such a case as this is aptly described in the following language from *Amos v. United States,* 496 F.2d 1269, 1273 (8th Cir.1974):

"... [I]n evaluating the trial court's polling procedure, since the trial judge is present on the scene, we must pay due deference to his views on whether the recalcitrant juror's ultimate acquiescence in the verdict came freely, without pressure from the court. *United States v. Brooks,* 420 F.2d [1350] at 1353, [D.C.Cir. 1969]; *Jackson v. United States,* 128 U.S.App.D.C. 214, 386 F.2d 641, 643 (1967)."

---

1. In a motion for mistrial filed a week after the return of the verdict, appellant alleged that the foreperson, after recanting, began to cry. But whether this happened or, if it did, what significance ought to have been attributed to it does not appear from the record. It seems to us that the following advice applies in such circumstances:

"In oral argument appellant's counsel referred to circumstances visible in the courtroom at the time of the poll which indicated the verdict to be less than unanimous. But if these circumstances were so plainly evident, it seems to us that they would, as they should, have been immediately called to the court's attention upon the record. Had that been done, any doubts whatever about the state of the jurors' minds could have been cleared up and appropriate action taken before the jury was dismissed." *Jackson v. United States,* 386 F.2d 641, 643 (D.C.Cir.1967).

2. Fed.R.Crim.P. 31(d) provides:

*"Poll of Jury.* When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

Appellant would substitute for this area of discretion a duty as a matter of law "to order the jury to return to its deliberations *as soon as the lack of unanimity became a possibility.*" (Emphasis in brief.) This simply is not the law.

Appellant seeks to bolster his challenge to denial of his post-trial motions on the basis of alleged extrinsic influence. An affidavit of the foreperson alleges that during the jury's deliberations, a court officer came several times to the jury room saying, "Have you reached a verdict yet? It is getting late." Because of this, the affidavit continues, "I felt rushed." Preliminarily, we note that the docket indicates that the jury retired to deliberate at 11:30 a.m. It had lunch, returned its verdict, was polled and was discharged, according to the trial judge, at "about ten minutes of four". Whether during such a period at such a time it was likely that a court officer would on several occasions refer to the lateness of the hour is doubtful.

■ Even assuming such statements were made by a court officer, they would not rise to the level of extrinsic pressures sufficient to compel a new trial. There was no substantive comment concerning the case, nor any contact at all with an individual juror, much less a threatening or inducing communication.

■ A second juror, Mr. McDonald, had, about an hour after the discharge of the jury, returned to the courthouse saying he had had second thoughts. On the following day, in a recorded session with the judge, McDonald stated that he was uncomfortable with his decision because he had wanted to abstain but was told that he had to vote one way or the other and realized that if he persisted against the other eleven there would be a mistrial. He said that he had been afraid when he had been individually polled in court.

The judge called for memoranda of law but indicated his present feeling that the juror, although sincere, was improperly trying to impeach his verdict, after the jury had been polled and discharged. Subsequently the judge denied the motion for mistrial based on McDonald's testimony "for reasons stated in open court".

The court was certainly correct. McDonald's testimony on the post-trial inquiry was wholly directed to the state of his own mind. He did not even record a change of mind, only his qualms based on his desire to obtain more information. Such second thoughts cannot be allowed to impeach a verdict solemnly reached. *United States v. Blankenship*, 707 F.2d 807, 809 (4th Cir. 1983).

*Affirmed.*