Mercedes **SANTIAGO HODGE**, et al.,
Plaintiffs, Appellees,

v.

**PARKE DAVIS & COMPANY**, et al.,
Defendants, Appellants.

Nos. 86–2135, 87–1461.

United States Court of Appeals,
First Circuit.

Heard June 8, 1988.

Decided July 26, 1990.

**630**

Donald R. Ware, with whom Steven W. Phillips, Andrew Z. Schwartz, Foley, Hoag & Eliot, Charles P. Adams, and Brown, Newsom & Cordova, were on brief, for defendants, appellants.

Alvaro R. Calderón, Jr., with whom José L. Rodriguez–Mangual and José Julián Alvarez–González, were on brief, for plaintiffs, appellees.

Before Bownes, Circuit Judge, Coffin, Senior Circuit Judge, and Torruella, Circuit Judge.

TORRUELLA, Circuit Judge.

This is an appeal from a judgment entered by the United States District Court for the District of Puerto Rico. Appellants Parke Davis Co. ("Parke Davis"), and two corporate officers of their subsidiary, Partab ("Labs"), claim that the district court erred in its application of Puerto Rico law and its denial of various motions. For the reasons stated below we affirm.

The facts of this case center around claims charging appellants with negligence in failing to provide a safe work place after appellees, employees or ex-employees, of Parke Davis' contraceptive pill production, suffered from estrogen contamination. These facts are reproduced in more detail in *Santiago Hodge v. Parke Davis & Co.*, 859 F.2d 1026 (1st Cir.1988).

Appellants raise five issues: (1) whether the parent corporation is a "statutory employer" under Puerto Rico law and therefore immune from liability, (2) whether the officers of the employer corporation are immune from liability under Puerto Rico law, (3) whether the court erred in failing to conduct a thorough poll of the jury to verify the unanimity of the verdict, (4) whether the claims were barred by the applicable statute of limitations and (5) whether the claim of one of the plaintiffs should have been dismissed for failure to exhaust available administrative remedies.

## DISCUSSION

### I. IMMUNITY

#### A. *Statutory Employer*

Two questions were certified to the Supreme Court of Puerto Rico regarding the application of the statutory employer immunity to Parke Davis. The text of these questions and a detailed description of the Parke Davis and Labs relationship are contained in said certification. *Santiago Hodge v. Parke Davis & Co*, 859 F.2d 1026. Thereafter, in response to our query, on April 27, 1990, the Supreme Court of Puerto Rico issued an opinion, the official English translation of which is attached as an exhibit to this opinion.

Essentially, the Supreme Court of Puerto Rico certified that the "statutory employer" doctrine does not apply in a context where a parent corporation owns all the stock of its subsidiary, but each entity has its own legal identity, and the only agreements between them are to provide license and technical assistance. The court indicated that "for a parent company to be considered statutory employer of its subsidiary's employees, there must exist a piecework, project or service contract between both corporations *compelling* the parent company *to pay the premiums* to the State Insurance Fund in the event the subsidiary fails to do so." The Court found that the contractual relationship between the companies did not render Parke Davis a "statutory employer."

The district court found that, although Parke Davis had assumed responsibility for employee safety, it never assumed responsibility for paying insurance premiums to the State Insurance Fund ("SIF"). As such, the district court's denial of Parke

Davis' claim of immunity is consistent with the Puerto Rico Supreme Court's determination. Therefore, we will not alter the result reached by the district court in that respect.

### B. *Corporate Officer's Immunity*

Appellants also argue that corporate officers Charles H. Kupsky and Kenneth W. Larsen, each of whom served as president of Labs, were immune from corporate tort liability. Appellants allege that the workers' compensation immunity extends to an insured employer's corporate officers if they are sued for breach of the employer's nondelegable duty of providing its employees with a safe work-place.

After the jury found that Kupsky and Larsen were personally responsible for, or directly involved with providing employees a safe work environment and that they were negligent in performing this duty, the district court entered judgment against these officers. We agree that the district court applied the proper analysis to determine the corporate officers' liability.

In *Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir.1980), we clearly stated that a determination of the liability of corporate officers is a "function of tort law and has nothing to do with employer immunity under workmen's compensation." *Id.* at 907. Thus, the issue to be determined is whether the individuals in question were personally involved or responsible for the injuries. *See also Santiago v. Becton Dickinson*, 571 F.Supp. 904 (D.P.R.1983). Because reasonable minds could differ on the extent of the officers participation or negligence, this question is one that should be left to the trier of fact. *Cf. Springer v. Seaman*, 821 F.2d 871, 876 (1st Cir.1987) ("if reasonable persons might differ, the legal cause issue is determined by the factfinder.") (quoting *Leboeuf v. Ramsey*, 503 F.Supp. 747, 758 (D.Mass. 1980), *rev'd on other grounds, Costa v. Markey*, 677 F.2d 158 (1st Cir.1982)).

In reviewing the denial of a judgment notwithstanding the verdict, this court will examine whether there is a reasonable basis in the record to support the jury's verdict. *Borrás v. Sea Land Service*, 586 F.2d 881, 885 (1st Cir.1978). The transcripts show that these officers were personally involved in making safety matter decisions. Upon review of the record, there is sufficient evidence to support a finding that Kupsky and Larsen were personally involved, hence we agree with the district court's conclusion.

## II. JURY POLLING

Appellants next argue that this court should reverse the district court and order a new trial based upon the district court's refusal to conduct a thorough poll of the jury. Prior to the return of the verdict, the court received a note from one of the jurors stating she was not in agreement with the "question" of damages and that she was answering the question only for purposes of the record. That note also was signed by the foreperson, who added that she and the other jurors did not share the opinion of the first juror. From a reading of these ambiguous notes it is possible to conclude that at the time they were written, there was lack of unanimity among the jurors. The verdict, however, was reached two hours after these notes were written.

The district court then proceeded to poll the jury. During these proceedings the district court ordered the verdict to be read aloud and instructed the jury to pay:

> close attention to the verdicts as they're going to be published and read aloud in open court. And following publication of the verdict, the jury will be polled. That is each juror will be asked individually whether the verdict as published constitute [sic] his or her, as the case may be, individual verdict.

Thereafter, each and every one of the jurors was individually queried as to their concurrence with the verdict. All expressed their agreement. Appellants challenge the adequacy of this procedure.

To support their contention appellants cite various criminal cases [1] in which

1. The right to jury polls has been codified in Rule 31(d) of the Federal Rules of Criminal

trial courts have been reversed for their actions in polling jurors. *United States v. Luciano*, 734 F.2d 68, 70 (1st Cir.1984); *Sincox v. United States*, 571 F.2d 876 (5th Cir.1978). All of these are inapposite to the present circumstances. These are cases in which a juror expressed a lingering doubt during or after the polling, notwithstanding which, the judge persisted in treating the juror's answer as to the polling as unqualified, and hastened to announce a unanimous vote. In *Luciano*, the court concluded that the judge's error was that he dominated "the juror and counsel fully as much as if he raced to record a verdict, effectually foreclosing any opportunity to poll jurors." *United States v. Luciano*, 734 F.2d at 70. We disagree with appellants' contention that these cases have any relevance to the record made in the situation at bar.

In the instant case the district court was first confronted with the possibility that the verdict was not unanimous before the verdict was entered and therefore before the polling. Two hours of deliberation took place thereafter, between the receipt of the note and the verdict. Then, during the actual polling there was no representation of lingering doubts or equivocation in the result expressed by any of the jurors. Lastly, the record reveals that in polling the jury the district court, clearly followed *Audette v. Isaksen Fishing Corp.*, 789 F.2d 956, 958–59 (1st Cir.1986), and ascertained that the verdict reached by the jurors was untainted and unanimous.

In *Audette*, this court stated that the purpose of a jury poll was to make certain that the jury had reached a unanimous and uncoerced verdict, i.e., to eliminate any uncertainty as to unanimity of the verdict. *Id.* at 70. In that case we also suggested our preference for individual polling and held that the trial court has "substantial discretion" to decide how to poll the jury. *Audette v. Isaksen Fishing Corp.*, 789 F.2d at 959–60 (quoting *United States v. Mangieri*, 694 F.2d 1270, 1282 (D.C.Cir.

1982). We find that, the district court's individual polling was within the scope of its discretion.

## III. TIME BARRED CLAIMS

Appellants allege that appellees were aware of their injuries and the cause of those injuries several years prior to filing suit; thus the applicable statute of limitations barred their claims. They contend that as a matter of law the statute of limitations was triggered the moment that plaintiffs had the idea that their injuries were work related, and, therefore, the district court erred in denying appellants request for Summary Judgment and its motion for directed verdict.

### A. *Error of law*

Appellants allege that as a matter of law, the action was time barred. Article 1868 of the Puerto Rico Civil Code provides for a one year statute of limitations which commences on the date the aggrieved party had knowledge of the tort. 31 L.P.R.A. § 5298. However, the one year "term does not start to run from the occurrence of the negligent act or damage, but from the moment the damages is known." *Barreto Peat, Inc. v. Luis Ayala Sucrs., Inc.*, 896 F.2d 656, 658 (1st Cir.1990) (quoting *Rivera Encarnación v. Estado Libre Asociado de Puerto Rico*, 113 D.P.R. 383, 385 (1982)). The issue here is the parties' opposing views as to when the damage became known by plaintiffs as being caused by defendant.

The Supreme Court of Puerto Rico has held that the statute of limitations starts to run on the date that plaintiff becomes aware of the injury and the person who caused it. *Colón Prieto v. Géigel*, 115 D.P.R. 232, 247 (1984). In *Colón Prieto*, the Court dealt with the statute of limitations issue in a medical malpractice insurance claim. In that case, defendant alleged the action was time barred because plain-

---

Procedure, but has not been included in the Federal Rules of Civil Procedure. We need not decide the significance of this choice at this time. It is sufficient for our present purpose to

restate that at least in a civil context, to poll or not to poll remains within the district court's discretion. *See Audette v. Isaksen Fishing Corp.*, 789 F.2d 956, 958–59 (1st Cir.1986).

tiff knew or had an idea of the cause of the injury.

In *Colón Prieto* plaintiff developed an infection in his tongue after a visit to his dental surgeon. Subsequently, he visited the dentist again to inquire as to this condition, suspecting something had gone wrong. He was informed by the dentist that the sore had been self inflicted. After an unsuccessful treatment, he visited another dental surgeon who informed him that his injury was caused by a surgical instrument. In view of these facts the Court established that in order to file an action the victim must know who caused it. Despite plaintiff's suspicions, it was at this point that plaintiff became aware of *who* and *what* had caused the damage. This interpretation, it was ruled, was required in situations where the negligent perpetrator benefits from the ignorance or trust of the injured. *Colón Prieto v. Géigel*, 115 D.P.R. 232.

The record shows that although appellees may have "had the idea" that their condition was work related, all employment and official sources such as Parke Davis, the State Insurance Fund physicians, as well as the Industrial Commission of Puerto Rico, informed them that their condition was not work-related.[2]

In the instant case, appellees visited State Insurance Fund physicians who reported that their condition and complaints had no relationship with working with hormones. There is also evidence that their efforts before the Industrial Commission, the appropriate administrative agency that handles worker's compensation cases, proved fruitless. The Commission also found that the employees specific complaints were not related to estrogen contamination. The facts further demonstrate that plaintiffs' lack of awareness was not due to their own negligence, carelessness, or lack of diligence, *cf. Rivera Encarnación v. Estado Libre Asociado de Puerto Rico.*, 113 D.P.R. at 385, and finally, that

Parke Davis was ultimately responsible of employee safety.

Upon review, we find that the jury was properly instructed on the application for the statute of limitations, that jury interrogatories were properly submitted and that the district court in so doing applied the law properly. Furthermore, the record shows that no objections were made to this effect. Because we find no error of law we review the jury's findings to see if they were supported by the evidence.

▇▇▇▇ The determination of when appellees had knowledge of "both the injury and its connection with the act of defendant," *Lavellee v. Listi*, 611 F.2d 1129, 1131–32 (9th Cir.1980), is a question of fact. *Cf. Id.* As such, it was for the jury to determine when plaintiffs appellees could be charged with having sufficient knowledge to trigger the statute of limitations. Although, allegations of errors of law are reviewed *de novo*, jury findings are findings of fact, and findings of fact cannot be set aside unless the evidence is insufficient to support the verdict.

After examining the record we find that it supports the factual findings. While there is evidence that shows appellees "had an idea" or suspected that their condition was work related some time prior to filing suit, there is also evidence that appellees became aware of the actual cause of their injury within the statutory period. Because, the record supports the jury's finding, *Borrás v. Sea Land Service*, 586 F.2d at 885, we will not disturb its decision.

## B. *Motions for Summary Judgment*

▇▇▇▇ Upon motion for summary judgment, the district court must view all facts and reasonable inferences that may be drawn therefrom in the light most favorable to the non-movant. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Summary judgment is proper when there is no genuine issue as to a material fact, and the moving party is entitled to a

---

**2.** Most of the Industrial Commission reports on record state that they were suffering certain physical and psychological conditions but that it

had "found [they had] no relationship with having been dealing with hormones such as nolestrin,...."

judgment as a matter of law. *Id.; see also Kennedy v. Josephthal & Co. Inc.*, 814 F.2d 798, 804 (1st Cir.1987); Fed.R.Civ.P. Rule 56. In the instant case, the district court found that there was an issue as to when the appellees became aware that their condition resulted from estrogen contamination. The affidavits filed by the appellees stated that plaintiffs were never told that they could be affected physically or mentally from exposure to the active ingredients used in the manufacture of oral contraceptives. To the contrary, they were always told that their condition was not related to estrogen exposure. Since knowledge of the cause of their injury is required to file suit, *Colón Prieto v. Géigel*, 115 D.P.R. at 247, appellee's affidavits evidence a genuine issue as to a material fact. Thus, the district court committed no error in denying appellants' request for summary judgment.

### C. *Motion for directed verdict*

For the same reasons underlying their summary judgment claim, appellants next claim that there was insufficient evidence to support the jury's finding in reference to the statute of limitations issue and that the district court therefore erred in denying appellants motion for directed verdict.

■ The standard of review for a motion for directed verdict is similar to that applied to a request for summary judgment. It is well settled that upon the consideration of a motion for directed verdict, the evidence must be viewed in the light most favorable to the non-movant, giving him the benefit of every favorable inference that may be fairly drawn therefrom. *Borrás v. Sea Land Service*, 586 F.2d 881, 885 (1st Cir.1978), *quoted in Valedón Martínez v. Hospital Presbiteriano*, 806 F.2d 1128, 1134 (1986). If "fair minded" persons could draw different inferences then the matter is for the jury. *Id.* Upon review, we find that the record provides an adequate evidentiary basis for the district court's decision to submit the matter to the jury.

### IV. DISMISSAL OF PREMATURE CLAIM

■ Appellants finally argue that one of the plaintiff's [3] claims should have been dismissed because it was premature. It contends that the Workmen' Accident Compensation Act mandates dismissal [4] when there is a State Insurance Fund claim awaiting final adjudication. After careful research of the applicable law, we find that the district court properly declined to dismiss the action. In *Alvarado v. Calaino Romero*, 104 P.R.R. 178, 186 (1975), the Supreme Court of Puerto Rico stated that

[w]ith regard to the workman's action, there is *dicta* to the effect that if it is brought prematurely it is null and void. *Negrón v. Industrial Comm'n*, 76 P.R.R. 282 (1954). If we were to turn such construction into a final doctrine, however, we would not be fully complying with the purpose of the legislation under our consideration. The declaration of nullity would unduly protect the third party, when what is inferred from our statute is the desire to protect the Fund's right to subrogation. We consider that to decide that the complaints filed prematurely are voidable, instead of void is more consistent with the law. Only the Fund may, of course, demand its annulment through the filing in due time of its action of subrogation and the corresponding prayer for declaration of nullity.

---

**3.** Teresa Velilla was employed at the plant from 1970 to 1982. She was awarded $300,000 by the district court. Velilla had filed a claim with the State Insurance Fund for the same injuries alleged in the complaint filed with the district court. The State Insurance Fund claim was filed prior to the federal district court claim and was still pending when the instant appeal was filed.

**4.** The applicable statute provides in pertinent part:

Neither the injured workman or employee nor his beneficiaries may institute any action ... against the third party responsible for the damages until after the expiration of ninety days from the date of the final and enforceable decision of the case by the Manager of the State Insurance Fund.

11 L.P.R.A. § 32 (Official Translation).

*Alvarado* disposes of the instant situation. *See also De Jesús v. Guerra Guerra*, 105 P.R.R. 282 (1976). As such, we uphold the district court's decision because it is clear that the purpose of the statute at issue is to protect the State Insurance Fund's exclusive right of subrogation and not that of a third party. Appellants do not have standing to contest the action's ripeness.

For the reasons stated herein, the decision of the district court is

*Affirmed.* Costs are granted to appellees.

## APPENDIX

### EXHIBIT

(Translation)

IN THE SUPREME COURT OF PUERTO RICO

No. CT–88–615 Certification

Mercedes Santiago Hodge *et al.*,

Plaintiffs and appellees

v.

Parke Davis & Co. *et al.*,

Defendants and appellants

MR. JUSTICE HERNANDEZ DENTON delivered the opinion of the Court.

San Juan, Puerto Rico, March 21, 1990

Here we will examine important issues concerning employer immunity from claims by injured workers under the Workmen's Accident Compensation Act, No. 45 of April 18, 1935 (11 L.P.R.A. § 1 *et seq.*)

The United States Court of Appeals for the First Circuit has certified us two questions under Court Rule 27 (4 L.P.R.A., App. I–A), and Civil Procedure Rule 53.1(c) (32 L.P.R.A., App. III). We must decide if a parent company may be considered the "statutory employer" of its subsidiary's employees and thus be immune from work-

related damage suits. The controversy is novel in our jurisdiction and those that have entertained the issue are split in their views. Let us examine the facts that give rise to the controversy.

I

In 1970, Parke Davis & Company ("Parke"), a United States company engaged in the manufacture, distribution and sale of pharmaceutical products, established and incorporated a subsidiary, Parke Davis Labs ("Labs"),[1] with principal offices in Fajardo, Puerto Rico. Parke wholly owns Labs which was created as an independent corporation. As such it takes advantage of Puerto Rico's tax incentives offered via the Federal Internal Revenue Code sec. 936.[2] Since it was created, Labs has manufactured and packaged oral contraceptives.

Parke and Labs signed two agreements: a License and Technical Assistance Agreement of September 1, 1969; and a Technical Assistance Agreement of December 1, 1973. In these agreements Parke licensed Labs to the nonexclusive use of its patents, discoveries and trademarks in its manufacturing process, and was committed to providing its subsidiary with the technical information necessary to manufacture certain products, as well as the quality control standards, packaging specifications and similar processing guidelines. Furthermore, Parke would provide the necessary technical assistance in several operational aspects, among them, employee safety.

For such license, Labs agreed to pay Parke a royalty of five percent (5%) of its sales. It likewise assured reimbursement of the technical service costs plus 15%. On the other hand, Parke retained the right to conduct on-site inspections of the manufacturing process and its products.

---

1. Originally, the subsidiary was known as Partab Corporation.

2. To benefit from these incentives, at least 80% of the corporative gross revenue should originate in Puerto Rico and at least 75% of the revenue should stem from a business or industrial activity in Puerto Rico. For practical matters a stateside company should set up a subsidiary corporation to run the local operations if it wishes to benefit from the federal tax incentives. 26 U.S.C. § 936(a)(2).

From the subsidiary's standpoint, the agreements did not bind Labs to sell its products exclusively to Parke, rather they allowed Labs to sell to third persons unrestrictively. Nonetheless, Labs always sold all its production to Parke.

Plaintiffs are mainly Labs employees[3] who suffered a series of physiological disorders resulting from exposure to hormones in the course of their employment.[4] They brought suit against Parke and several Labs officials in the United States District Court for the District of Puerto Rico. They alleged that the defendants were negligent in failing to provide adequate work conditions, failing to supply the adequate clothing and equipment for on-the-job safety, failing to give adequate instructions and supervision in the use of safety equipment, and failing to warn them of the hazards to be encountered in the handling of and exposure to the substances used in the manufacturing process. After the evidence was heard, the jury found for plaintiffs and the court eventually assessed damages in $2,815,000.[5]

The defendants appealed. Among other things they seek reversal of the judgment of the United States District Court. They allege that they were covered by the immunity under the Workmen's Accident Compensation Act. The appellate court deemed it necessary to certify the following questions of law to this Court:

1. Does the statutory employer doctrine apply in the context of parent-subsidiary corporations, where the subsidiary is wholly owned by the parent, and the corporations are bound in the activities relevant to the case by a licensing agreement?

2. If so, is the determination of statutory employer status to be made solely on the basis of the agreement, or may courts consider the de facto relationship, based, for example, on the corporate structure of the parent-subsidiary relationship or the economic nature of the relationship?

Since this case involves questions of Puerto Rican law that are crucial for the adjudication of the appeal,[6] in the absence of clear-cut precedents in our case law, and in view of the fact that we have an adequate statement of the pertinent facts, we accept the certification. *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780 (1982); *Medina & Medina v. Country Pride Foods*, 122 D.P.R. —— (1988).

Given the importance of the controversy, we ordered the State Insurance Fund to state its position in writing. It has complied. We have also accepted the amicus curiae brief of Squibb Manufacturing, Inc. Having exhausted the regulatory procedures, we are now in a position to decide.

II

According to the workmen's compensation regime established in the Workmen's Accident Compensation Act, when an employee suffers an injury, illness or is disabled or dies as a result of "any act or function inherent in [his] work," and his employer is insured according to law, his right to compensation is limited to the statutory compensation offered through the State Insurance Fund. See arts. 2 and 20 (11 L.P.R.A. §§ 2 and 21).

The worker thus injured lacks a cause of action to sue his employer for damages, regardless of the employer's degree of negligence. *De Jesús v. Osorio*, 65 P.R.R. 601,

---

3. Some employees' relatives also appear as plaintiffs.

4. Among these are: depression, loss of libido, schizophrenia, dizziness, headaches, fibrocysts and gastrointestinal disorders.

5. Originally the jury awarded damages in more than seven million dollars, but the sums were reduced by the court by way of remittitur.

6. Although other errors are raised that would dispose of the case without need of resolving the certified question, these do not apply to all plaintiffs.

After having examined V.1 of the appendix of the record on appeal before the First Circuit, we also consider meritless plaintiffs' argument that the certified question was not raised in the court below. Apparently, this seems to be the opinion of the Court of Appeals.

604 (1946); *Cortijo Walker v. Water Resources Authority,* 91 P.R.R. 557, 563 (1964); *B.C.R. Co., Inc. v. Superior Court,* 100 P.R.R. 753, 756–757 (1972); *Admor. F.S.E. v. Flores Hnos. Cement Prods.,* 107 D.P.R. 789, 792 (1978).

This system, "integrated ... on the basis of a social, objective liability," *Cortijo Walker, supra,* at 561, was implemented to put an end to the state of forsakenness which engulfed the workers who were injured · in work-related accidents and who had to prove their employer's negligence in order to obtain compensation. If the injured worker was lucky, he got a belated monetary relief; if not, he got nothing. As framed, the plan compromised the higher compensation available under the general civil law rules in return for a moderate but reliable statutory compensation based on dependency. *Id.* at 562.

However, when a worker's compensable injury, disease or death occurs in circumstances where a "third person" may be liable, the Workmen's Accident Compensation Act does not affect the civil liability of the wrongdoer who is a stranger to the employer-employee relationship. The statute does not seek to extend immunity from worker's claims to strangers. See 2A A. Larson, *The Law of Workmen's Compensation,* § 71.10 (1988). Under such circumstances, the injured worker and the State Insurance Fund, subrogating itself in the benefits of the employee, may file an action against a third party. Art. 31 (11 L.P.R.A. § 32.)

To finance the compensation system, the statute establishes a compulsory insurance system for all employers. See arts. 2 and 18 (11 L.P.R.A. §§ 2 and 19). The statute not only compels employers to pay their employees' insurance, but the employer is also *subsidiarily* liable for the premium payments ("taxes") of the workers of a person who "contracted" with him or the workers of "a contractor or independent subcontractor" hired by him when the latter were not insured:

Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, whether by the job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer; and all accounts or taxes collected by the State shall be based on the employer's current payroll in which shall be included the above-mentioned laborers; Provided, That this provision shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this chapter. Art. 19 (11 L.P.R.A. § 20).

This article incorporates the "contractor-under" clause into our statute. A majority of United States jurisdictions have similar provisions. See, in general, 1C Larson, *supra,* §§ 49.00 and 49.11. One of the purposes of this article is to prevent the potential evasion of the statutory coverage when an employer, to reduce costs, subcontracts part of his ordinary operations with uninsured contractors. *Id.* § 49.00.

The comprehensive wording of the cited provision sees to it that the State Insurance Fund obtains sufficient information on payrolls to eventually compute and invoice the premiums. When an employer does not meet his obligation, the person who contracted him for the work or service must make up for it.

In construing art. 19 of the Workmen's Accident Compensation Act, this Court has stated that it seeks "not only to forestall the evasion of the Act, but also to protect the workers and employees of irresponsible and uninsured subcontractors by imposing liability on the principal contractor, who has it within his power, in choosing subcontractors, to insist upon appropriate protection against [work-connected] accidents." *Colón Santiago v. Industrial Commission,* 97 P.R.R. 203, 204 (1969). It was precisely in *Colón Santiago* when we first used the term "statutory employer" to refer to the principal contractor and to distinguish him from the subcontractor, the real or contractual employer of an employee who seeks compensation for a work-related

accident, when the principal contractor may be protected by the employer immunity. *Id.* at 204–205.

In *Lugo Sánchez v. A.F.F.*, 105 D.P.R. 861 (1977), we examined the propriety of an action seeking damages for work-related injuries filed by an employee of an *insured* independent contractor. The action was brought against the owner of a project under construction who had contracted the work with the employee's real employer. We held that in those cases where the described contractual relationship arises, the principal contractor or project owner is not a "third party" within the meaning of art. 31, but a "statutory employer," immune from worker claims by reason of being expressly exempt from the obligation to carry a policy in those cases where the independent contractor was insured. *Id.* at 864–865. See also, *Vda de Costas v. P.R. Olefins*, 107 D.P.R. 782, 785 (1978); *Rodriguez v. Union Carb. Grafito, Inc.*, 107 D.P.R. 848, 849–850 (1978).

Our case law has only recognized the "statutory employer" within the context of a contract or subcontract for work or services, and only for project owners, principal contractors or subcontractors who had, with regard to the injured worker, the mutual legal obligation to insure him with the State Insurance Fund. See, *Lugo Sánchez, supra*, at 866–867; *F.S.E. v. E.L.A.*, 111 D.P.R. 402, 405 (1981). Therefore, in *Ruiz Diaz v. Vargas Reyes*, 109 D.P.R. 761 (1980), we refused to adopt the common family immunity doctrine, by which all employers taking part in the same project were immune from claims by workers laboring in the said project. *Id.* at 763.

In *Ruiz Diaz, supra*, at 765, we stated that "[t]he determinant factor of immunity is the existence of that direct or indirect link between the workman who suffers the accident and the employer in the course of whose employment and as consequence of which the injury takes place." Absent that legal nexus linking the worker's direct employer to the wrongdoer in the "mutual legal obligation" to insure the employee with the Fund, we would be facing a "third party" lacking statutory protection against claims by injured workers.

### III

In the case at bar, the contractual relationship of defendant Parke with Labs, the real employer of the plaintiff workers, does not correspond to the link "principal contractor-subcontractor" or "project owner-contractor" in the context of a contract for work or services. These are the only cases in which we have applied the statutory employer doctrine.

The license and technical assistance agreements between these corporations are not project contracts. Neither do the technical assistance agreements turn Parke into the statutory employer of Labs's workers, because although these are service contracts linked to the principal contractor's business, according to the agreement, Parke is the one obliged to offer the services to Labs. In the best of cases the relationship is just the other way around. That is, Labs would be the statutory employer of those Parke employees who offer technical services to the subsidiary. Under our case law, Parke cannot be considered the statutory employer of Labs' employees in the absence of a project or service contract in which Labs agrees to work for Parke. Only in this situation would the "mutual legal obligation" to insure Labs's employees arise between Parke and Labs.[7]

Parke argues that it should be considered plaintiffs' statutory employer because Labs, its subsidiary, is in charge of part of its production. According to Parke, "a statutory employer is simply 'a person who hires another person to perform part of its work'" (Appellants' Brief, at 6), and that, to such ends, the court may examine the nature of all the economic and the *de facto* ties between the parties without hav-

---

**7.** Parke is incorrect in arguing that it is responsible for payment of the policy premiums for Labs' employees in the event its subsidiary fails to do so. The law does not compel corporation stockholders to insure the company's employees. Moreover, generally the stockholders are not liable for the corporation's debts and obligations.

ing to circumscribe itself to the contract. We do not agree.

The *contractual* relationship between the actors under the "statutory employer" doctrine has always been crucial to its application. See *Lugo Sánchez, supra,* at 865 ("Within its *contractual relationship* with Zachry, the Water Resources Authority is an employer, principal or 'statutory' ") (underscore supplied); *Vda. de Costas, supra,* at 785 ("The decision regarding defendant's position as statutory employer *depends on the contractual relations between said defendant and the workmen's real employer.*") (Underscore supplied.)

Moreover, even if we were to accept the existence of a supply contract between the two corporations, the consecutive purchases by Parke of all of Labs's contraceptive products do not suffice to trigger the contractor's immunity clause. The contract described in art. 19 is not a purchase-sale contract. See, *Atiles, Mgr. v. Industrial Commission,* 67 P.R.R. 470, 472 (1947). The simple fact that Labs always sold its entire production to Parke, when there was no obligation to do so, cannot grant the buyer immunity as employer of the seller's employees.

Likewise, the simple fact that Parke wholly owns Labs does not trigger the immunity. 2A Larson, *supra,* § 72.13, at 14–75. That was our decision in *López Rodríguez v. Delama,* 102 D.P.R. 254 (1974). In said case we reviewed a dismissal of a damage claim brought by a company employee who was injured—on her way home after work—in a traffic accident while traveling as a passenger in a vehicle driven by one of the company's shareholders and officers. Although the accident was covered by law, the employee did not report it to the State Insurance Fund. Neither did she sue her employer; rather, she sued the driver of the vehicle and his insurer. The trial court ruled that since the accident was work-connected, the plaintiff was solely entitled to receive compensation from the State Insurance Fund.

In reversing the judgment appealed we stated:

Even though there is no unanimous opinion, the prevailing doctrine sustains that *the immunity the statute grants to the insured employer does not extend to* the directors, officers, *shareholders,* managers, or co-workers of said employer. [Citations omitted]. In the absence of a legislative expression with regard to the meaning of the term "third parties" used in art. 31 of the Act, we shall grant it its usual meaning assuming that it includes every person aside from the injured employee and his insured employer. . . . [T]here is no justification in extending the immunity granted by law to the directors, officers, or other employees of the insured employer who do not contribute personally to defray the expenses of the Fund when they have incurred negligence and have caused damages to other employees.[8] (Citations omitted.) *Id.* at 258–259.

We thus refused to automatically extend employer immunity to all those persons who occupy positions in or who are owners of the corporate entity that employs the injured employee.

Consequently, the relationship between Parke and Labs is not that described in the contractor's clause of the Workmen's Accident Compensation Act. For a parent company to be considered statutory employer of its subsidiary's employees, there must exist a piecework, project or service contract between both corporations *compelling* the parent company *to pay the premiums* to the State Insurance Fund in the event the subsidiary fails to do so. The facts of this case do not trigger the employer immunity contained in art. 19 of the Workmen's Accident Compensation Act.[9]

8. This has become a minority view. At present, only ten (10) States retain the same; however, the change has mainly come through *legislation.* 2A A. Larson, *The Law of Workmen's Compensation,* §§ 72.11 and 72.22, at 1468 and 14–116—14–117.

9. We need not pass on Parke's civil liability under local statutes. This issue was not certified to us. It was not even raised as an error by the appellants before the Court of Appeals for the First Circuit.

## IV

We cannot close this opinion without stating that the employer immunity grounded on the contractor clause of art. 19 cannot be confused with the alter-ego doctrine. As appellants [10] have correctly stated, when the subsidiary's corporate veil is pierced and it is shown that it is just the alter ego of the parent company, both corporations are for all effects treated as one entity. In this case the parent company would have immunity, not because it is the injured worker's statutory employer but because it is his direct employer. In the case before our consideration, however, none of the parties has attempted to pierce the corporate veil.[11]

Finally, we shall not adopt, without any statutory grounds therefor, the solutions adopted in other jurisdictions to settle this type of controversy, particularly when a common approach has not been reached. See, *Note: Adopting an Economic Reality Test when Determining Parent Corporations' Status for Workers' Compensation Purposes,* 12 J.Corp.L. 569 (1987); Davis, *Workmen's Compensation—Using an Enterprise Theory of Employment to Determine Who is a Third Party Tort-feasor,* 32 U.Pitt.L.Rev. 289 (1971). It is incumbent upon the Legislature to take the pertinent measures to correct any possible inequity in the worker's compensation regime.

In conclusion, we answer the certified questions as follows: the "statutory employer" doctrine does not apply in the context of a parent company that owns all the stock of its subsidiary when each company has its own legal identity and between them there only exists some license and technical assistance agreements. Regardless of the nature of the corporate structure, the contractual relationship between companies is crucial in determining the application of the "statutory employer" doc-

trine. After all, this is how the manager of the State Insurance Fund may objectively weigh whether or not the parent company had the legal obligation to insure its subsidiary's employees in the event the latter failed to do so.[12]

Judgment will be rendered accordingly.

## JUDGMENT

San Juan, Puerto Rico, March 21, 1990

For the reasons set forth in the opinion, which is made an integral part of this judgment, we certify that the "statutory employer" doctrine does not apply in the context of a parent corporation that owns all the stock of its subsidiary when each company has its own legal identity and between them there only exists some license and technical assistance agreements. Regardless of the nature of the corporate structure, the contractual relationship between the companies is crucial in determining the application of the "statutory employer" doctrine. In view of this answer, there is no need to answer the second certified question.

We hereby order the Bureau of Translations of this Court to translate forthwith the present opinion and judgment for its timely certification to said federal court.

It was so agreed and ordered by the Court and certified by the Chief Clerk. Justice Negrón García issued a concurring opinion. Justice Rebollo López dissents and states in the judgment that: "the opinion rendered by a majority of the Court in the present case in answer to certain 'questions' certified to us by the United States Court of Appeals for the First Circuit concerning the application of the 'statutory employer' doctrine in the context of a parent-subsidiary relationship, is futile and ineffective inasmuch as it fails to draw up clear legal guidelines that would aid the courts and the administrative officers con-

---

**10.** *Appellants' Brief,* at 12. Appellees agree. *Plaintiffs–Appellees' Brief,* at 2.

**11.** However, see *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655, 661–663 (6th Cir.1979), where the Court held that once a company's owners divide the business into separate corporations,

the "principles of reciprocity" require that courts also recognize the separate legal identities when sued by an injured worker.

**12.** In view of this answer, there is no need to answer the second certified question.

cerned to settle this type of litigation. Furthermore, the 'rule of law' laid down by the majority of the Court in this field can be 'flouted' and easily circumvented by corporations involved in similar situations." Justice Ortiz dissents without a written opinion.

Francisco R. Agrait Lladó.
Chief Clerk

JUSTICE NEGRON GARCIA, concurring.

San Juan, Puerto Rico, March 21, 1990

"The governing view for the situation we are considering should be detached from facts which may change depending upon the cleverness of the parties in formulating the conditions of the juridical relation and rather framed within the determination of the position of the one in relation to the other with special stress on the degree of economical dependence. Primordial attention should be paid to the economic realities rather than to technical classifications which might prevail in other areas of the law, but which do not lead to a fair solution when remedial legislation is involved." *Nazario v. Vélez*, 97 P.R.R. 447, 453 (1969).

The breadth of these pronouncements require us to focus our attention on the grounds that pave the way for the fairest solution in harmony with the letter and original spirit of the Workmen's Accident Compensation Act, in keeping with the changing realities of our industrial society.

## I

The present action concerns the application of the *statutory employer* doctrine to the particular contractual relationship between a United States based parent corporation and its local subsidiary.

Faced with this issue—not *expressly* addressed by this Court before—the United States Court of Appeals for the First Circuit, through the certification procedure laid down in Civil Procedure Rule 53.1(c) (32 L.P.R.A., App. III) and in our Rule 27 (4 L.P.R.A., App. I-A), certified to us the following questions: "1) Does the statutory employer doctrine apply in the context of parent-subsidiary corporations, where the subsidiary is *wholly* owned by the parent, and the corporations are bound in the activities relevant to the case by a licensing agreement?; 2) *If so*, is the determination of statutory employer status to be made solely on the basis of the agreement, or may courts consider the *de facto* relationship, based, for example, on the corporate structure of the parent-subsidiary relationship or the economic nature of the relationship?" (Underscore supplied.) Certification, pp. 16–17.

For the reasons we shall state below, we answer the first question in the *negative*. Appellant Parke Davis & Co. ("Parke") does *not* have employer immunity from claims brought by the workers of its wholly-owned subsidiary, Parke Davis Labs ("Labs"). Consequently, the second question becomes academic; we need not address it.

## II

The factual framework clearly arises from the certification. *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 790 (1982). The facts were heard and adjudicated before the federal forum. Therefore, we shall refer to the opinion of the Court. Let us then focus on the applicable law.

In order to recognize employer immunity as provided by the Workmen's Accident Compensation Act, No. 45, April 18, 1935, as amended, 11 L.P.R.A. § 1 *et seq.*, we should address two crucial concepts that together reflect the true aim and scope of this legislation. This requires a brief summary of the *insured employer* scheme vis-à-vis a third party that may be sued for damages, and which we shall call the *vulnerable third party*.

The Workmen's Accident Compensation Act establishes a system through which the injured worker is entitled to compensation—independently of the identity of the wrongdoer—if and when the injury is work-related. In exchange for this remedial scheme, the employer acquires *immunity* from worker claims by *paying* the policy premiums.

Now then, art. 31 (11 L.P.R.A. § 32) recognized the *third party's* vulnerability to workers' damage suits. And art. 19 (11 L.P.R.A. § 20) defines who is the employer obliged to insure his workers. This obligation not only falls on the employer with regard to his immediate and direct employees, *but covers that employer who as the principal (statutory employer) enters into an agreement with a contractor with regard to the latter's employees.* The *key* to this "subsidiary" obligation lies in the fact that if the contractor is insured, the principal employer is not required to insure the former's employees.

Hence, the determination of who is the insured employer under the Workmen's Accident Compensation Act, shall be effected in the light of "1) whether or not there is an obligation to insure; and 2) whether the person is actually covered by the Fund, with respect to the claimant worker." *F.S.E. v. E.L.A.*, 111 D.P.R. 402, 405 (1981). Only in the event that the contractor has failed to insure his workers is that the statutory employer is obliged to cover them through the statutory coverage. Otherwise, *if the statutory employer fails to cover these workers, he will not be protected by the statutory immunity.* As we held when we joined the dissenting opinion of former Justice Dávila in *Lugo Sánchez v. A.F.F.*, 105 D.P.R. 861, 871 (1977), "[t]his being so, we see no reason why the immunity granted by the law to the statutory employer should be extended when, on account of his negligence, an employee of a contractual employer sustains injuries. We cannot forget that the third parties who offer the greater risk to the security of the workers are the employees of the statutory employers that work in the same project. The obvious purpose of the provision that permits complaints against third-party tortfeasors is that the loss be suffered by the tortfeasor and not by the injured worker or the State Insurance Fund."

Thus, we must conclude that the statutory employer contemplated in the immunity clause of the Workmen's Accident Compensation Act is the person who, as a question of fact, has insured his uninsured contractor's employees. Only thus can we see the legal relation that binds the statutory employer, the contractors or direct employer's worker, and the State Insurance Fund. Therefore, we see that there are two types of statutory employers: an immune employer paying the policy premiums of his contractor's employees, and another, the *vulnerable third party*, who pays no coverage. This was our position in our dissent in *Vda. de Costas v. P.R. Olefins*, 107 D.P.R. 782 (1978).

### III

Having briefly outlined these principles, let us apply them to the present case.

Labs, a wholly-owned subsidiary of Parke, is, for purposes of the present action, a *direct insured employer.* Hence, it has the absolute immunity of the Workmen's Accident Compensation Act. However, *Parke has not paid nor pays the statutory premiums for Labs' employees.* This evidently places Parke in the position of a *vulnerable third party.* Even if it could be a statutory employer—that is, one who employs workers through others [1]—it is an uncontested fact that Parke did not insure Labs's workers hence it was not

---

**1.** Since Labs is an insured employer who pays its worker's premiums, we do not deem it necessary to settle the issue of whether or not Parke is a statutory employer in the light of the legal relations between it and Labs, to wit: 1) *prior* to 1970, Parke produced the oral contraceptives in one of its divisions; 2) *since then,* Labs is the manufacturer; 3) all of Labs' production is authorized by Parke, since the latter allowed Labs to use its *patents, certificates* and *federal permits* to handle and use the raw material involved in the production, aside from designing its plant operations, quality control standards and packaging (which would carry Parke's logo, not Labs'); and 4) from the outset, Labs' full stock was sold to Parke even when it "could" sell its product elsewhere.

We shall likewise refrain from pronouncing ourselves on the effects the Parke–Labs legal identity would have on the "single employer doctrine" that has gained acceptance by this Court in the labor relations field. See, *J.R.T. v. Asoc. C. Playa Azul I,* 117 D.P.R. 20, 28 (1986); and *Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485, 496–497 n. 5 (1985).

covered by "the protective mantle of immunity." *Lugo Sánchez, supra,* at 872.

## IV

The opinion rendered by the Court today, although correct in its result, leaves a very broad avenue for interpretation. Simple formalities or contractual agreements could lead to the absurdity that the immunity be granted to the person who does not pay, just because he has "the mutual legal obligation to insure" his contractor's employees. The mere expectation of this obligation is not enough. We should avoid the prejudicial effects that case law extensions not foreseen by the Workmen's Accident Compensation Act could have on the workers' rights.

For the foregoing reasons, we concur.

## CHIEF CLERK'S CERTIFICATE

I, Francisco R. Agrait Lladó, Chief Clerk of the Supreme Court of Puerto Rico, DO HEREBY CERTIFY:

That the annexed document is a photocopy of the official translation from Spanish into English (said translation having been made under the authority of Act No. 87 of May 31, 1972) of the opinion rendered by this Court on March 21, 1990, in Case No. CT–88–615, *Mercedes Santiago Hodge, et al., v. Parke Davis Co. et al.,* the original of which in Spanish is under my custody in this Office. The concurring opinion of Mr. Justice Negrón García is attached hereto.

IN WITNESS WHEREOF, and at the request of the interested party, I issue these presents for official use, fee-free, under my hand and the seal of this Court in San Juan, Puerto Rico, this 27th day of April 1990.

/S/ Francisco R. Agrait Lladó
Francisco R. Agrait Lladó
Chief Clerk
Supreme Court of Puerto Rico