**COMBAND TECHNOLOGIES, INC., Plaintiff,**

**v.**

**WH–TV BROADCASTING CORP. d/b/a Telecable De Puerto Rico, Inc., Defendant.**

**Civ. No. 90–2157 GG.**

United States District Court, D. Puerto Rico.

Aug. 12, 1991.

Edward M. Borges, O'Neill & Borges, Hato Rey, P.R., for plaintiff.

Jorge P. Sala, Ponce, P.R., for defendant.

## OPINION AND ORDER

GIERBOLINI, District Judge.

Before the court are defendant WH–TV Broadcasting Corporation's ("WH–TV") objections to the Magistrate's Report and Recommendation filed on June 12, 1991.

### I. BACKGROUND

This is a suit involving a contract entered into by the parties on January 14, 1987 for the sale of cable equipment units and related components. Plaintiff Comband Technologies, Inc. ("Comband") alleges that WH–TV owes it the following amounts: (1) $308,147.28 plus interest on the unpaid balances from their due dates at the contractually agreed rate of 1½% per month and $151.96 of daily interest accumulated after July 1990; (2) $296,826.80 consisting of a retroactive adjustment amount for an unmet volume of sales which the parties stipulated in the agreement dated January 14, 1987; (3) interest on the retroactive adjustment amounts at the legal rate of 6%; (4) interest in accordance with Law 78 of July 11, 1988.

The Magistrate recommended that summary judgment be granted in favor of Comband for the principal amount with interest and "on the issue of liability alone for an unspecified retroactive amount with interest ..." (Report and Recommendation, at 17). WH–TV does not question the existence of its debt to Comband in the principal amount of $308,147.28. However, WH–TV objects to the Magistrate's recommendation that it be held liable for a retroactive amount with interest on several grounds. First, WH–TV contends that the Magistrate erred in not finding that plaintiff waived its rights to make back charges. Second, WH–TV argues that the Magistrate erroneously concluded that there was no novation. Finally, WH–TV argues that the Magistrate erred in finding a standard price in the contract and in recommending the application of an interest change of 1½% per month to the debt outstanding.[1]

### II. SUMMARY JUDGMENT

In determining whether summary judgment is appropriate, the court must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633–34 (1st Cir.1990); *Amsden v. Moran*, 904 F.2d 748 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

**1.** We note that the defendant has not cited any cases in support of its objections nor has defendant attempted to distinguish the authorities cited by the Magistrate.

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989).

 *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) establishes that the party moving for summary judgment has the initial burden of showing "the absence of a genuine issue concerning any material fact." *Id.* at 159, 90 S.Ct. at 1609. If the movant (in this case defendant) shows that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of a genuine issue of material fact. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.[2] The materiality of a fact is determined according to the substantive law that governs the dispute. A fact is material only if it affects the outcome of the suit. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510.

In deciding defendant's motion for summary judgment, we examine the facts in the light most favorable to the non-moving party, in this case, plaintiff. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis & Co.,* 909 F.2d 628, 633–34 (1st Cir.1990); *Roy v. Augusta,* 712 F.2d 1517 (1st Cir.1983). Applying this standard, and after an extensive review of the record, and according the non-moving party the indulgence required, we find that plaintiff has not presented specific facts showing a genuine issue for trial. *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

### III. FACTS

In 1986, Telecable de Puerto Rico, Inc. ("Telecable") began negotiating with General Electric Company ("General Electric") to purchase some cable equipment system units. As part of the transaction, in December 1986, a marketing plan for wireless cable television in Puerto Rico was allegedly prepared by General Electric for Telecable.

The marketing plan projected a potential market for the wireless cable television of about 66,000 subscribers. On January 14, 1987, Telecable and General Electric entered into a three-year agreement for the sale of cable system equipment.[3] Three provisions of the Agreement are significant. Under Article 2.2, Telecable, as buyer, agreed that all amounts over thirty (30) days would accrue interest from the date the amount was due at the rate of 1½% per month or as permitted by the applicable law. Under Article 12, the parties agreed that "[n]o modification, amendment, rescission, waiver or other change shall be binding on any party unless assented to in writing by that party." Finally, the contract required a minimum volume purchase of 50,000 cable system equipment units during the 36 months of its duration, as follows: 10,000 units by the end of the first 12 months, 35,000 units by the end of 24 months and 50,000 units by the end of 36 months. If Telecable had failed to purchase the minimum amount of units at the end of each 12–month period, General Elec-

---

**2.** *See generally* Louisell, Hazard & Tait, *Cases and Materials on Pleading and Procedure: State and Federal* 170 (6th ed. 1989) ("[A]s the Court stated in *Celotex,* the nonmoving party does not necessarily have to produce evidence in a form that would be admissible at trial. And, as the *Adickes* Court said, the nonmoving party does not have to adduce evidence at all until the moving party satisfies its initial burden of showing the absence of a genuine issue of fact").

**3.** By letter dated January 29, 1987, Telecable informed General Electric that it was changing its name to WH–TV Broadcasting Corporation but it would retain the name of Telecable as its trade name. The letter signed by Telecable's president stated that WH–TV as successor of Telecable would honor the parties' contract.

tric had the right to invoice Telecable for the difference in the price paid and the standard rate then in effect for the volume purchases.

In January 1987, two entities, Ponce Broadcasting Corporation and Sala Business Corporation, invested in Telecable. In August 1987, these two entities took over the administration of WH–TV and apparently realized that the potential market figures of 66,000 subscribers was not feasible.

When it became obvious that WH–TV was not going to meet all the terms of the Agreement, the parties started corresponding apparently with a view to enter into a new agreement with different terms. The contents of these letters are set forth in the Magistrate's Report and Recommendation and we will not repeat what has already been stated eloquently. Suffice to say that these letters show that the parties were contemplating entering into a new agreement under different terms, but they never actually agreed to enter into a new agreement.[4]

WH–TV's objections to the Magistrate's Report regarding the standard price in the contract and the interest payable are meritless. We have reviewed with care the Magistrate's discussion of the retroactive adjustment clause and the standard rate price. We find that the Magistrate's analysis is persuasive and we will not repeat it here. We proceed to elaborate on some of the points made by the Magistrate in the Report and Recommendation.

## IV. DISCUSSION

### A. WAIVER AND ESTOPPEL

■ WH–TV argues that the letters evidence that Comband waived its rights to enforce the retroactive volume adjustment clause and to receive accrued interest. We disagree.

■ The letters only evidenced that the parties intended to enter into a new commercial relationship but they did not do so. Section 4 of the Civil Code of Puerto Rico

provides: "Rights granted by the laws may be renounced, provided they be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person." 31 L.P.R.A. § 4. The renunciation of rights authorized by Section 4 must be clear, conclusive and unequivocal. *Cabrera v. Doval*, 76 P.R.R. 728 (1954). Waiver of rights is not generally presumed and is of the strictest application. *Quiñones Quiñones v. Quiñones Irizarry*, 91 P.R.R. 217, 257 (1964).

WH–TV relies on the letters to argue that genuine issues of material fact are pending. We find that the letters clearly demonstrate that Comband has not voluntarily renounced, or acted in a manner that is inconsistent with, its rights under the Agreement.

The modification by Comband of the amount of time to pay for the equipment received by WH–TV and the deferral of due interest amount for a period of ninety (90) days represents an effort on the part of Comband to accommodate the financial difficulties that WH–TV was experiencing. It does not amount to a renunciation by Comband of its rights under the Agreement. In fact, the letter dated April 29, 1988, which WH–TV argues shows that volume purchases were waived, states clearly that relationship between the parties was governed by the contract dated January 14, 1987. *See also* Article 12 of the Agreement dated January 14, 1987 ("No modification, amendment, rescission, waiver or other change shall be binding on any party unless asserted to in writing by that party.").

### B. NOVATION

■ Defendant's argument that the Magistrate erred in finding no novation is meritless. In tracing the historical evolution of novation, Civil Law commentators have noted that:

> The concept of novation proceeds from Roman law, when the formalism of contracting required that the slightest variation in the terms of a binding agreement

---

4. By letter dated December 27, 1988, however, General Electric informed Telecable that it would be transferring its operations to Comband Technologies, Inc.

would be translated into the termination of the old agreement and in the creation of a new binding agreement. The contents of the new agreement may have been the same, but, by law it had to be considered a new agreement. However, at the present time we find ourselves in the opposite situation and the argument is about when a binding agreement may be considered the same in spite of significant transformation experienced in its contents of the change of the parties subject of the agreement.

J. Puig Brutau, *Fundamentos del Derecho Civil*, Vol. III, at 389 (4th ed. 1988) (our translation).

The Civil Code of Puerto Rico recognizes that novation is never presumed and that the slightest change in the terms of an obligation does not necessarily extinguish it. *See, e.g., Miranda Soto v. Mena Ero,* 109 D.P.R. 473 (1980). Section 3242 of Title 31 states:

> In order for an obligation to be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points.

31 L.P.R.A. § 3242.

As the Magistrate noted, when a creditor grants extensions or deferrals to a debtor, each of these by itself does not constitute novation. *See Miranda Soto,* 109 D.P.R. at 479–80 ("There is no novation ... when during the existing agreement opportunities are given for compliance, i.e., such as extensions or deferral of payments"); Puig Brutau, *Fundamentos del Derecho Civil,* at 397 ("If the variation is merely quantitative, in all probability the parties did not want to substitute one obligation for the other, particularly when it involves the mere reduction of the quantity of a money debt.").

In sum, there is no novation, in cases like the instant one, where the creditor grants an extension of time for compliance with the terms of a binding agreement.

## V. CONCLUSION

In view of the foregoing reasons, the Magistrate's Report and Recommendation is approved and fully adopted as our own. Defendant's objections to the Magistrate's Report are hereby DENIED. Therefore, defendant WH–TV is liable for the principal amount with interest owed to Comband under the contract dated January 14, 1987. Judgment will be entered regarding this issue.

In addition, defendant WH–TV is liable for a retroactive adjustment amount with interest. The exact figure of the retroactive adjustment amount shall be determined at a hearing. Consequently, this matter is referred to the Magistrate.

SO ORDERED.