**Mercedes SANTIAGO–HODGE, et al., Plaintiffs, Appellees,**

v.

**PARKE DAVIS & COMPANY, et al., Defendants, Appellants.**

**Nos. 86–2135, 87–1461.**

United States Court of Appeals, First Circuit.

Heard June 8, 1988.

Decided Oct. 14, 1988.

Hoag & Eliot, Boston, Mass., were on brief, for defendants, appellants.

Alvaro Calderon, Jr., Hato Rey, P.R., with whom Jose L. Rodriguez Mangual and Jose Julian Alvarez–Gonzalez, Hato Rey, P.R., were on brief, for plaintiffs, appellees.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This appeal follows a jury trial in which plaintiffs prevailed against the parent company of their employer and two officers on claims predicated on negligent failure to provide a safe workplace. Appellants raise five issues: namely, whether the parent corporation is a "statutory employer" under Puerto Rico law and therefore immune from liability, whether the officers of the employer corporation are immune from liability under Puerto Rico law, whether the court erred in not polling the jury after a conversation between several jurors and an expert witness, whether the claims of five of the plaintiffs were barred by the applicable statute of limitations, and whether one of the plaintiffs has yet to exhaust available administrative remedies. We conclude that the first and possibly controlling issue, the status of the parent corporation, is yet unsettled under Puerto Rico law, and raises issues of such importance to the local authorities that we certify the issue to the Supreme Court of the Commonwealth of Puerto Rico, before reaching the remaining grounds for appeal.

## STATEMENTS OF FACTS AND THE LEGAL CONTROVERSY

### Background

In 1970 Parke Davis & Company ("Parke"), a pharmaceutical company engaged in the manufacture and distribution of drug products, created Parke Davis Labs (then known as Partab Corporation) ("Labs"), a wholly-owned corporation, incorporated under the laws of Puerto Rico. It is undisputed that Parke created Labs to benefit from the incentives and tax advantages offered by Congress and by the Com-

Donald R. Ware, with whom Steven W. Phillips, Andrew Z. Schwartz, and Foley

monwealth government to foster the industrial development of the island. Since 1970 Labs has manufactured and packaged oral contraceptives.

Parke and Labs signed a "License and Technical Assistance Agreement" ("the Agreement"). Although the Agreement permitted Labs to sell its products without any constraints, in fact it has always sold all of its production to Parke. Under the Agreement Parke also provided Labs manufacturing directions, quality control standards, packaging specifications, and similar processing guidelines. Parke reserved the right to conduct on-site inspections of the manufacturing processes and products. Parke also provided technical assistance on a variety of matters, including diverse issues related to employee safety.

The injured plaintiffs (relatives who suffered indirectly also filed claims) suffered a variety of ailments, which the jury found to be caused by exposure to hormones in the work environment. The injuries included loss of libido, depression, schizophrenia, dizziness, headaches, fibrocystic disease of the breasts, mastectomies, gastrointestinal disorders, gynecomastia and galactorrhea.

Labs was an insured employer under the Puerto Rico Workmen's Accident Compensation Act, P.R.Laws Ann. tit. 11 (1977 & Supp. 1987) ("the Act"), and thus immune from liability. *Id.* § 21. The defendants were officers of Labs and Parke, which was sued as a third party. *See id.* § 32 (reproduced and discussed *infra* p. 1030).

After a month-long trial, the jury returned verdicts in favor of nine plaintiffs in the aggregate amount of $7,276,000—reduced after a motion for remittitur to $2,815,000.

*The statutory employer issue*

■ Defendants appellants requested judgment notwithstanding the verdict on the grounds that Parke is a statutory employer under the law of Puerto Rico. Because it is so crucial to our case, we reproduce the court's analysis in toto:

> Under Puerto Rico's Workmen's Compensation law an employee's remedy for a work related injury against the direct employer and "statutory employer" is

limited to a claim through the State Insurance Fund. 11 L.P.R.A. sects. 20, 21. "Statutory employer" has been defined as a general contractor who maintains an employment relationship with the injured employee of an insured subcontractor. *Ruiz Díaz v. Vargas,* 109 D.P.R. 761 (1980); *Lugo Sánchez v. Puerto Rico Water Resources Authority,* 105 P.R.R. 1015 (1974). *See Santiago v. Becton Dickinson & Co., S.A.,* 571 F.Supp. 904, 907 (D.P.R.1985). A statutory employer has also been held to be an owner of a particular site which is leased to another party; as in a shipowner who charters the vessel to another company. *See Miró Martínez v. Compañía Transatlántica Española, S.A.,* 643 F.2d 897 (1st Cir.1981); *García v. Friesecke,* 597 F.2d 284 (1st Cir.1979). In addition, a parent corporation may be considered a statutory employer if the corporate veil can be pierced because the parent corporation so completely dominates the subsidiary that the two are actually a single entity. *See Muñiz v. National Can Corp.,* 737 F.2d 145, 147, n. 2 (1st Cir. 1984); *see also Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 905 (1st Cir.1980).

In an attempt to prevail on their claim that Parke Davis is a statutory employer and immune from tort liability, defendants confuse the business relationship between Parke Davis and Partab, plaintiffs' direct employer. They argue that Parke Davis is a general contractor and Partab a subcontractor. The scant evidence presented to this issue at trial contradicts the argument and establishes that Parke Davis and Partab are two separate business entities linked together as parent company and subsidiary respectively. [Footnote: Defendants argue that the Technical Assistance Agreement between Parke Davis and Partab establishes a subcontract between the parties. We find, to the contrary, that the agreement indicates the independence of the companies. For example, Partab was not required to sell or submit the licensed products it produced to

Parke Davis, but was free to sell the products "in any area of the world."] As a parent company Parke Davis could be considered a statutory employer only if it so dominated Partab that the two companies were in reality a single entity. Under the law of Puerto Rico "strong and robust" evidence of control by the parent company over the subsidiary must be produced to pierce the corporate veil. *San Miguel Fertilizer Corp. v. P.R. Drydock & Marine Terminals*, 94 P.R.R. 403, 409 (1967). The evidence here does not indicate such control or domination to find Parke Davis to be a "statutory employer" immune from liability. [Footnote: We further note that the overwhelming weight of authority holds that a parent company and the subsidiary are separate entities and the parent can be sued in tort as a third party. *See* 2A Larsen, *Law of Workmen's Compensation*, Sect. 72.40 (1982); *Dorden v. C.H. Herst [Heist]*, 743 F.2d 1137 [1135] (5th Cir.1984); *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir.1979); *Stoddard v. Ling–Temco–Vought, Inc.*, 513 F.Supp. 314 (C.D.Cal. 1980) ].

Finally, we hold that sufficient evidence was presented for the jury to find that Parke Davis assumed a duty to act by affirmatively undertaking to provide a safe working environment at Labs and was negligent in performing that duty. *See Cardona Muñoz [Muniz] v. National Can Corp.*, 737 F.2d 145 (1st Cir.1984) (standard to hold a parent company liable for negligence).

No. 78–175, Opinion and Order, slip op. at 6–8 (D.P.R. October 2, 1986). Before entering into the analysis of the statutory employer doctrine in Puerto Rico law, we point out two basic conceptual flaws in the court's reasoning: first, the "alter ego" (piercing the corporate veil) analysis— usually seen in the context of jurisdictional concepts or in that of a corporation that is avoiding liability shielded by the veil of a shell corporation—is inapposite in the context of statutory employer analysis. If the corporate veil is pierced, there is a legal identity between both corporations and the employer's immunity extends to the newly discovered party, not because the employer is the statutory employer but because it is the real or "direct" employer. Secondly, in the present case it has been undisputed throughout that both corporations are separate entities, and there are no allegations of de facto identity, so the language about piercing the corporate veil simply should play no role in this context. The appropriate context for, and the parameters of, the statutory employer doctrine will be the stuff of the next section. Because the facts relevant to a case vary with the applicable legal rules, we must discuss first the conceptual framework of the statutory employer doctrine to explain the full complexity of the issue before us.

*Puerto Rico Courts*

The statutory employer doctrine is the result of judicial interpretation of the Puerto Rico Workmen's Compensation Act. P.R.Laws Ann. tit. 11, § 20 (1978) states:

Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, whether by the job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer; and all accounts or taxes collected by the State shall be based on the employer's current payroll in which shall be included the above-mentioned laborers; *provided*, that this provision shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this Act.

The Puerto Rico Supreme Court explained the section as follows:

The purpose of this provision is not only to forestall the evasion of the Act, but also to protect the workers and employees of irresponsible and uninsured subcontractors by imposing liability on the principal contractor, who has it within his power, in choosing subcontractors, to insist upon appropriate protection

against labor accidents. In this situation the contractor is denominated as the statutory employer to distinguish him from the subcontractor, called the contractual or real employer. Hence, the liability imposed on the principal contractor is of a subsidiary nature, so that if the subcontractor carries insurance as independent employer the former assumes no risk.

*Colón Santiago v. Industrial Commission*, 97 P.R.R. 203, 204–05 (1969) (citations omitted). From that basic statement we get the notion of immunity reaching one step above the immediate employer, which raises the issue of what kind of contractual relationship is required to grant immunity; or, stated negatively, what parties will *not* be covered by the immunity doctrine.

In *Lugo Sánchez v. Puerto Rico Water Resources Authority*, D.P.R. 861 (1977) (page references will be made to the official, unpublished translation), the court addressed the question of when a third party —a party other than the direct employer of the injured employee—can be found to be a statutory employer.

Section 32 of the Act provides that:

In case where the injury, the professional disease, or the death entitling the workman or employee or his beneficiaries to compensation in accordance with this chapter has been caused under circumstances making a third party responsible for such injury, disease, or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third party responsible for said injury, disease, or death, within one year following the date of the final decision of the case by the Manager of the State Insurance Fund, who may subrogate himself in the rights of the workman or employee or his beneficiaries to institute the same action ...

Thus, "third parties" are liable to the injured employee, but under section 20, some arguable "third parties" share the insured employer's immunity from suit. In *Lugo Sánchez* the Water Resources Authority contracted with Zachry for the construction and maintenance of several thermoelectric plants. In order to repair a valve, Zachry noticed the Authority that an employee would be working there and that the Authority had to eliminate all the steam from the pipelines. The Zachry employee also obtained on-site assurances that the pipes would have no steam. The employee was severely burned because the pipes did contain steam. The employee received compensation from the State Insurance Fund, under the Zachry policy, and sued the Authority on grounds of negligence.

The court stated the issue as follows: "The matter in question is whether the Water Resources Authority caused the damages or injuries as a 'third party' and whether, as such, the action for negligence brought against it lies." *Lugo Sánchez* at 1202. The court's approach is clear: the first determination is whether the defendant can be liable at all, namely, whether it is a "third party" under the Act. Once that hurdle is cleared, there remains the determination of whether an action for negligence (or for the predicate cause of action) lies. The court never reached the second issue. It found that the Authority was a statutory employer: "[it] is not a third party because it is a party inextricably linked to the independent contractor and to its employer [sic] under the judicial policy established by art. 19 [now art. 20] of the Act." *Id.* at 1204.

Addressing the converse question, what *is* a third party, the court stated:

For the purposes of art. 31 [now art. 32] of the Act, a third party liable for damages is a person unconnected with, alien, and separated from the juridical interaction that relates the statutory employer (W.R.A.) and the contractor (Zachry) with the State Insurance Fund in the mutual legal obligation of insuring their workmen and employees, pursuant to the provisions of the Workmen's Accident Compensation Act. The employer expressly exempted by law from the obligation to insure and which is a party governed by the exclusive compulsory insurance scheme cannot be considered a third party or third-party tortfeasor.

*Id.* at 1205–06.

In *Viuda de Costas v. Puerto Rico Olefins*, 107 D.P.R. 782 (1978) (page references

to official, unpublished translation), the Superior Court granted summary judgment where defendant, an insured employer, contracted a maintenance company, itself also an insured employer, for maintenance of the former's plant. Three maintenance workers were killed. Plaintiffs sued the defendant as a third party.

■ The Supreme Court affirmed the summary judgment. It found there was no factual issue in dispute because the defendant provided the contract with the maintenance company and plaintiffs did not object to its contents. *Id.* at 855. The court stated that "[t]he decision regarding defendant's position as statutory employer depends on the contractual relations between said defendant and the workmen's real employer." *Id.* The court further stated, summarizing the legal issues presented in that case:

Neither are there questions of law with regard to defendants' status as statutory employers. Nowadays this term usually stands for owners and principals who are bound by law to insure the employees hired by contractors or subcontractors to carry out works and services, when said employees are not insured by the latter. The purpose of this obligation is to see that said employees are insured, regardless of the fact that the insurance policy be paid by the contractor or subcontractor, or in its stead, by the principal or owner of the work. The payment of said policy by either the contractor, subcontractor, principal, or owner of the work, grants immunity to all employers in actions for damages filed by their employees or by the Fund. *Lugo Sánchez v. A.F.F., supra,* and *Colón Santiago v. Industrial Commission,* 97 P.R.R. 203 (1969).

*Id.* at 855–56. Thus, the relevant relationship between the actual and the statutory employer must be a vertical, contractual one in order to link the employee with the statutory employer.

In *Ruiz Díaz v. Vargas Reyes,* 109 D.P.R. 761 (1980) (page references to official, unpublished translation) a plaintiff was injured by a subcontractor of plaintiff's employer, that is, a party outside the linkage of statutory employer-subcontractor-employee. The court found this situation to be clearly outside the reach of the statutory employer doctrine.

To extend immunity to the group of contractors and subcontractors on the grounds of a common participation in the same work would go against the worker's right to a claim for damages which he has not compromised or renounced in the historic formula of exclusive insurance incorporated in our Workmen's Accident Compensation Act.

*Id.* at 1024.

The court added that "[t]he determinant factor of immunity is the existence of that direct or indirect link between the workman who suffers the accident and the employer in the course of whose employment and as consequence of which the injury takes place." *Id.* Two principles flow from the above quoted language: the coverage of the statutory immunity is to be interpreted restrictively, since application of the doctrine is in a sense a limitation of workers' remedies. Secondly, the "vertical" relationship mentioned above must be predicated on some employment-like nexus. "The mere contact or contractual connection with the employer outside the employment contract does not transmit the immunity and protection of the exclusive remedy provided by Art. 20 of the Act against a claim for negligence." *Id.* at 1025.

### The Statutory Employer Doctrine in Federal Courts

Federal courts have a long history of applying the Puerto Rico jurisprudence in diversity cases in which the statutory employer doctrine arises. In *Musick v. Puerto Rico Tel. Co.,* 357 F.2d 603 (1st Cir.1966) the court faced a typical statutory employer situation. Not finding clear precedent in Puerto Rico cases, the court analyzed the statute:

No provision in the Act defines "employer covered by this chapter," or "employer," in terms specifically addressing our present question. Nevertheless, it seems implicit in section 16 [which defines rem-

edies and procedures against uninsured employers] that the party employing the independent contractor is an "employer" of the independent contractor's employees.

*Id.* at 605.

To reach this conclusion, the court relied on the reference in section 20 to the employer paying premiums for its own employees or those of employees of uninsured independent contractors working for it. *Id. Musick* was cited approvingly in *Colón Santiago, supra*, 97 P.R.R. at 207, whence the doctrine was bestowed its name.

Until 1983 the development of Puerto Rico caselaw allowed federal courts to interpret the doctrine at a par with Puerto Rico courts. *See Lusson v. Carter*, 704 F.2d 646, 650–52 (1st Cir.1983), restating standard from *Ruiz Díaz v. Vargas Reyes*, 109 D.P.R. 761 (1980), *supra* at 1031–32.

More recently, we have contributed, without guidance from Puerto Rico case law, to the statutory employer doctrine in the context of a parent-subsidiary relationship. In *Muñiz v. National Can Corp.*, 737 F.2d 145 (1st Cir.1984), the parent company owned 80% of the employer's shares and was involved in the subsidiaries' safety matters. The court reached two conclusions that are relevant to this long story: it stated that "[a]n injured employee, who is estopped from bringing a cause of action against a subsidiary-employer, *may bring a third-party claim against the parent corporation, if the parent is a separate legal entity.*" *Id.* at 147 n. 1 (emphasis added). This conclusion did not reflect Puerto Rico caselaw or statute, and cited only *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 661–63 (6th Cir.1979) (applying Kentucky law) and *Stoddard v. Ling–Temco–Vought, Inc.*, 513 F.Supp. 314, 375 (C.D. Cal.1980) without any analysis of their applicability in Puerto Rico. The second conclusion was that "immunity will be extended to a parent corporation for injuries to an employee of the subsidiary only when the parent so completely dominates the subsidiary-employer that the two are a single entity." *Id.* at n. 2 (citing 2A A. Larson, *The Law of Workmen's Compensation*

§ 14–191 (1982)). Thus the court in *Muñiz v. National Can* focused on the corporate structure of the parent-subsidiary relationship, instead of looking at the contractual relationship, as mandated by Puerto Rico caselaw. *See also Ramírez Pomales v. Becton Dickinson & Co., S.A.*, 649 F.Supp. 913, 920–21 (D.P.R.1986) (outlining Puerto Rico law but focusing on corporate structure), *aff'd on other grounds, Ramírez Pomales v. Becton Dickinson & Co., S.A.*, 839 F.2d 1 (1st Cir.1988).

■ Therefore, in *Muñiz v. National Can* we adopted a rule that may conflict with Puerto Rico law, because of the misplaced focus on the corporate structure—as explained before, because of confusion between the "alter ego" (piercing the corporate veil) approach and the concepts relevant to a determination of statutory employer status. Puerto Rico courts, although having never addressed the issue of the parent/subsidiary in relation to the statutory employer doctrine, have focused more on the *contractual* nature of the relationship.

Part of the difficulty of the present case is that focusing only on the contract that binds parent and subsidiary, it would probably be easy to find that the parent is *not* protected by the statutory employer immunity. However, viewing the actual terms of the relationship, the parent may have the kind of control over the subsidiary that would allow extension of immunity as a statutory employer.

Furthermore, two issues make this area of law especially delicate. First, because of the peculiar tax incentives of bringing subsidiaries to Puerto Rico, most cases where this issue will arise will be in federal court under diversity jurisdiction. If the parent is the subsidiary's alter ego, that finding will *ipso facto* lead to both personal jurisdiction and immunity. *See Santiago v. Becton Dickinson & Co., S.A.*, 571 F.Supp. 904, 907 (D.P.R.1983). However, in a situation where the parent is not the subsidiary's alter ego and jurisdiction is based on other grounds, the case law may conflict. *Muñiz* might be read as not allowing for a finding of immunity when the

parent is a separate legal entity. Under *Ruiz Díaz,* however, the focus is on the contractual relationship between the parent corporation and the actual employer, and therefore, it is possible that the parent company would enjoy immunity even though it was not the subsidiary's alter ego. Secondly, as a policy consideration, Puerto Rico has great interest in regulating its employee protection scheme, *see Ruiz Díaz, supra* at 1022, and in controlling its industrial incentives program—a program which is arguably affected by limiting or expanding the potential liability of corporations that choose to establish subsidiaries in Puerto Rico.

The case before us raises the issue of whether Labs is an independent contractor under the Act. Facially, it is appealing to say that Parke complies with the requirements of a statutory employer: it is a separate corporate entity; it has a business relationship with a subordinate, separate corporate entity which, arguably, it *de facto* controls. Labs was created by Parke to benefit from Puerto Rico's tax and other incentives. Under their agreements, Labs was free to sell its goods to anybody—but in fact sold only to Parke. As a wholly owned subsidiary, and as a matter of economics, Labs is under the absolute control of Parke. In effect, Labs is now doing all that a division of Parke did, before Parke decided to move that operation to Puerto Rico.

On the other hand, the usual applicability of the statutory employer doctrine has been in the context of a party contracting out services necessary for a larger project or for an ongoing activity. The relationship between contractor and subcontractor usually parallels that of an employer and employee. The main goal of the statutory scheme is to assure that employees are covered by insurance. Under the statute, who will undertake the responsibility is an item of the bargaining process between the principal and the actual employer. The incentive to assure coverage is the immunity granted both direct and statutory employers. Such bargaining may or may not occur in the context of parent and subsidiary corporations.

Thus, we go back to the facts of this case. The issue may not be whether a parent-subsidiary relationship can *ever* allow the protection of the statutory employer doctrine. Since diverse factual considerations play a role in that determination, our creating an across-the-board rule may be unnecessary, and may offend the comity due to local courts, since Puerto Rico courts have never addressed this specific issue.

We therefore certify this question to the Supreme Court of Puerto Rico, pursuant to Rule 27 of the Rules of the Supreme Court of Puerto Rico, Tit. 4 App. I–A. The questions of law are as follows:

### QUESTIONS OF LAW

1. Does the statutory employer doctrine apply in the context of parent-subsidiary corporations, where the subsidiary is wholly owned by the parent, and the corporations are bound in the activities relevant to the case by a licensing agreement?

2. If so, is the determination of statutory employer status to be made solely on the basis of the agreement, or may courts consider the de facto relationship, based, for example, on the corporate structure of the parent-subsidiary relationship or the economic nature of the relationship?