April 21, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1659

DAVID VEGA-MENA,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

ERRATA SHEET

The opinion of this Court issued on April 13, 1993, is
amended as follows:

On page 12, last line, delete "is" after "it".

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1659

DAVID VEGA-MENA,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,

and Skinner,* Senior District Judge.

Eli B. Arroyo with whom Andres Garcia Arache and Alcides Oquendo

Maldonado were on brief for appellant.

Silvia Carreno Coll, Assistant United States Attorney, with whom

Daniel F. Lopez-Romo, United States Attorney, was on brief for the

United States.

April 13, 1993

*Of the District of Massachusetts, sitting by designation.

CAMPBELL, Senior Circuit Judge. Appellant, a

security guard injured on the job at a United States naval

station in Puerto Rico, brought this negligence action

against the United States and others after he collected

benefits under Puerto Rico's workers' compensation system.

The United States District Court for the District of Puerto

Rico granted summary judgment for the United States, finding

that the United States was appellant's "statutory employer"

and thus immune from suit under the Puerto Rico Workmen's

Compensation Act. Appellant argues on appeal that the court

misapplied Puerto Rico law, and, in the alternative, that

federal law preempts the statutory employer immunity rule of

Puerto Rico law. We affirm the grant of summary judgment.

I.

In 1988, appellant David Vega-Mena was employed by

Vigilantes, Inc. ("Vigilantes"), a Puerto Rican corporation,

as a security guard. Pursuant to a contract with the United

States of America, Vigilantes provided security guard

services at the United States Naval Station, Roosevelt Roads

in Ceiba, Puerto Rico. On the evening of October 13, 1988,

Vega-Mena was performing his duties as a security guard at

the Roosevelt Roads naval station when he fell into a tank of

waste diesel fuel and sustained serious injuries.

Vigilantes was an insured employer pursuant to the

Puerto Rico Workmen's Compensation Act ("PRWCA"), 11 L.P.R.A.

-3-

1 et seq., and Vega-Mena applied for, and collected, all

the benefits available to him as an employee of Vigilantes

under the PRWCA. Thereafter, in October 1990, Vega-Mena and

other plaintiffs brought this civil action in the United

States District Court for the District of Puerto Rico against

the United States, Vigilantes, and certain other defendants.

Plaintiffs alleged that defendants' negligence had caused

Vega-Mena's injuries. For reasons not relevant to this

appeal, the complaint was amended in April 1991 to name Vega-

Mena as the sole plaintiff and Vigilantes and the United

States as the only defendants.

Both the original and amended complaints alleged

that the district court had jurisdiction pursuant to 28

U.S.C. 1346, the jurisdictional provision of the Federal

Tort Claims Act. The complaints also referred to 28 U.S.C.

2671, which defines terms used in the Federal Tort Claims

Act. The only cause of action alleged was for "negligence."

The district court dismissed the claims against

Vigilantes on jurisdictional grounds. Vega-Mena does not

appeal from that ruling. In July 1991, the United States

moved for summary judgment on the claims against it. The

government argued that the Puerto Rico Workmen's Compensation

Act entitled it to "statutory employer" immunity against

appellant's action. Vega-Mena replied that the United States

did not meet the requirements of Puerto Rico for statutory

-4-

employer status. In the alternative, he contended, the

Longshore and Harbor Workers' Compensation Act, 33 U.S.C.

901 et seq. which applied to his case, appellant argued,

by force of the Defense Bases Act, 42 U.S.C. 1651

preempted Puerto Rico's statutory employer rule, disentitling

the United States to statutory employer immunity.

The district court granted summary judgment to the

United States, finding no genuine issue of material fact and

holding that the PRWCA provided the United States with

statutory employer immunity. The court noted that

plaintiff's original and amended complaints made no reference

to the Longshoreman and Harbor Workers' Compensation Act or

the Defense Bases Act, but stated that "the outcome would

have been the same" even if he had "brought the claim" under

those acts. Appellant Vega-Mena appeals from the district

court's final order to the extent it granted summary judgment

for appellee, the United States.

II.

A. Puerto Rico Statutory Employer Doctrine

Vega-Mena contends that the district court

misconstrued Puerto Rican law in determining that the United

States was immune as a "statutory employer" from tort

liability for appellant's injuries.

Under the workers' compensation scheme in Puerto

Rico, when an employee suffers an injury, illness, disability

-5-

or death as a result of "any act or function inherent in

[his] work," and his employer is insured according to law,

the employee's right to compensation from the employer is

limited to the statutory compensation offered through the

State Insurance Fund. 11 L.P.R.A. 2, 21; Santiago Hodge v.

Parke Davis & Co., 126 D.P.R. 1 (1990) (hereinafter Santiago

Hodge P.R.) (reprinted in Santiago Hodge v. Parke Davis &

Co., 909 F.2d 628, 635 (1st Cir. 1990) (hereinafter Santiago

Hodge II)). The injured worker lacks a cause of action

against his employer for damages regardless of the employer's

degree of negligence. Santiago Hodge P.R., reprinted in 909

F.2d at 636-37. The PRWCA does not, however, prevent the

injured worker from suing a third party in tort for the

worker's insured injuries, such a defendant being a stranger

to the employer-employee relationship. Id. at 637; see 11

L.P.R.A. 32.1

1. 11 L.P.R.A. 32 provides in part:

In case where the injury, the
professional disease, or the death
entitling the workman or employee or his
beneficiaries to compensation in
accordance with this chapter has been
caused under circumstances making a third
party responsible for such injury,
disease, or death, the injured workman or
employee or his beneficiaries may claim
and recover damages from the third party
responsible for said injury, disease, or
death, within one year following the date
of the final decision of the case by the
Manager of the State Insurance Fund, who
may subrogate himself in the rights of

-6-

The concept of "statutory employer" was fashioned

by the Puerto Rico courts to extend an employer's immunity to

certain persons who were not technically employers but were

thought to deserve immunity from tort liability because of

their close involvement in the employer-employee

relationship. See Santiago Hodge v. Parke Davis & Co., 859

F.2d 1026, 1029 (1st Cir. 1988) (hereinafter Santiago Hodge

I). The courts took note of the fact that a contractor is

not only compelled to provide workmen's compensation

insurance for his own employees, see 11 L.P.R.A. 19, but is

also "subsidiarily liable for the premium payments ('taxes')

of the workers of a person who 'contracted' with him [the

contractor] or the workers of 'a contractor or independent

subcontractor' hired by him when the latter were not

insured[.]" Santiago Hodge P.R., reprinted in 909 F.2d at

637 (emphasis in original); see 11 L.P.R.A. 20.2 The term

the workman or employee or his
beneficiaries to institute the same
action . . . .

2. 11 L.P.R.A. 20 provides:

Every insured employer shall, on
reporting his annual payrolls, include in
said payrolls the wages paid to all the
workmen and employees working for or
employed by him, whether by the job or
under some person with whom the employer
contracted for the job, or under a
contractor or independent subcontractor
employed or contracted by said employer;
and all accounts or taxes collected by
the State shall be based on the

-7-

"statutory employer" is thus used by the Puerto Rico courts

to refer to "the principal contractor and to distinguish him

from the subcontractor, the real or contractual employer of

an employee who seeks compensation for a work-related

accident, when the principal contractor may be protected by

the employer immunity." Santiago Hodge P.R., reprinted in

909 F.2d at 638. One purpose for making contractors

responsible for the premiums incurred by subcontractors is to

encourage principal contractors, when choosing

subcontractors, to insist that they carry the appropriate

workers' compensation insurance. Id. at 637.

Puerto Rico case law "has only recognized the

'statutory employer' within the context of a contract or

subcontract for work or services, and only for project

owners, principal contractors or subcontractors who had, with

regard to the injured worker, the mutual legal obligation to

insure him with the State Insurance Fund." Id. at 638. "The

determinant factor of immunity is the existence of that

direct or indirect link between the workman who suffers the

accident and the employer in the course of whose employment

and as consequence of which the injury takes place." Ruiz

employer's current payroll in which shall
be included the above-mentioned laborers;
Provided, That this provision shall not
be applicable to employers for whom work
is done by an independent contractor who
is insured as an employer under the
provisions of this chapter.

-8-

Diaz v. Vargas Reyes, 109 D.P.R. 761, 9 P.R. Sup. Ct. Off'l

Translations 1019, 1024 (1980).

Unless there exists a legal nexus linking the

worker's direct employer to the wrongdoer in the mutual legal

obligation to insure the employee with the Fund, the alleged

wrongdoer is a mere "third party" lacking statutory

protection against claims by injured workers, and not an

immune "statutory employer." Santiago Hodge P.R., reprinted

in 909 F.2d at 638. The crucial factor in determining

whether the requisite legal nexus exists is the nature and

terms of the contractual relationship between the contractor

and subcontractor. Id. at 639. In Lugo S nchez v. Puerto

Rico Water Resources Auth., 105 D.P.R. 861, 5 P.R. Sup. Ct.

Off'l Translations 1198 (1977), the Puerto Rico Supreme Court

held that a principal contractor who requires his independent

subcontractors to take out workmen's compensation insurance

has "insured" the workmen of the independent subcontractor

and is therefore immune from suit under the exclusive remedy

provision, 11 L.P.R.A. 21. See Garcia v. Friesecke, 597

F.2d 284, 288-89 (1st Cir.), cert. denied, 444 U.S. 940

(1979); Santiago Hodge P.R., reprinted in 909 F.2d at 638.

In the present case, the district court ruled that

the United States qualified as a statutory employer because

it shared the legal obligation to insure Vigilantes'

employees under the Puerto Rico workers' compensation

-9-

program. The United States and Vigilantes clearly had a

principal contractor-subcontractor relationship. Under their

written agreement, Vigilantes was obligated to provide guard

services to the United States at specified locations for the

term of the contract. Vigilantes' employees, including

appellant, worked as guards at United States naval

facilities, and appellant sustained his injuries while

working as a Vigilantes guard on patrol at such a facility.

Even more to the point, the United States contractually

required Vigilantes to obtain state workers' compensation

insurance for the security guards as required by Puerto Rico

law.3 It was under this insurance that appellant, following

3. The relevant provision in the contract reads:

H.18 INSURANCE

Within fifteen (15) days after the award of this
contract, the Contractor [Vigilantes] shall furnish the
OIC [a United States government agency] certificate of
insurance as evidence of the existence of the following
insurance coverage in amounts not less than the amounts
specified below in accordance with the "INSURANCE - WORK
ON A GOVERNMENT INSTALLATION" clause, Section I.

COVERAGE
COVERAGE PER PERSON PER ACCIDENT PROPERTY

Comprehensive $300,000 $1,000,000 $100,000
General
Liability

Automobile $300,000 $1,000,000 $100,000
Liability

Worker's AS REQUIRED BY STATE LAW
Compensation

(Other as required by State Law)

-10-

injury, brought his claim for compensation and recovered.

Given the terms of the contract between the parties, it is

clear that under Puerto Rico law the requisite legal nexus

existed between the United States and Vigilantes, and thus

that the United States was properly found by the district

court to be immune as appellant's statutory employer.

Appellant makes only one attack on the district

court's application of Puerto Rico law to the facts, arguing

that the contract between Vigilantes and the United States

was essentially a "contract for hire" recognized by 31

L.P.R.A. 4111, and that this type of contract creates only

a relationship of employer-employee, not contractor-

subcontractor.4 However, section 4111 only entitles

The Certificate of Insurance shall provide for thirty days
written notice to the OIC by the insurance company prior to
cancellation or material change in policy coverage. Other
requirements and information are contained in the
aforementioned "Insurance" clause.

4. 31 L.P.R.A. 4111 provides:

Period of contract for services;

remuneration The services of servants

and laborers may be contracted for a
fixed period of time, or without a fixed
period. A hiring for life shall be void.
Professional services, as regards the
remuneration therefor, shall be subject
to the agreement of the parties; and
where there is no agreement as to
remuneration, and a disagreement should
arise respecting the same, the party
entitled to such remuneration may sue and
recover from the adverse party the
reasonable value of such services in any
court of competent jurisdiction.

-11-

servants and laborers to collect the reasonable value of

their services from an employer if there is no written

employment agreement, and prohibits "hiring for life." 31

L.P.R.A. 4111. It does not in any way alter or void the

terms of the written contract between the United States and

Vigilantes, which clearly establishes a contractor-

subcontractor relationship sufficient to entitle the United

States to statutory employer immunity under Puerto Rico

law.5

We find no error, therefore, in the district

court's holding that, under Puerto Rico law, the United

States is immune as a "statutory employer" from suit by

appellant under Puerto Rican tort law.

B. Applicability of the Longshore and Harbor Workers'

Compensation Act

Appellant argues, in the alternative, that the

United States is not immune because the federal Longshore and

Harbor Workers' Compensation Act preempts Puerto Rico's rule

of statutory employer immunity. The district court applied

Puerto Rico law because appellant's complaint stated its

5. Appellant argues that the United States waived the
affirmative defense of statutory employer immunity by failing
to raise it in its answer to the complaint. We decline to
consider appellant's argument because he never advanced it
before the district court. Clauson v. Smith, 823 F.2d 660,

666 (1st Cir. 1987).

-12-

claim against the United States under the Federal Tort Claims

Act ("FTCA"). The complaint expressly invoked the

jurisdictional provision of the FTCA, 28 U.S.C. 1346,

without mentioning any other federal or state law. Under 28

U.S.C. 1346(b), the district court has jurisdiction over

actions against the United States for money damages:

for injury or loss of property, or
personal injury or death caused by the
negligent or wrongful act or omission of
any employee of the Government while
acting within the scope of his office or
employment, under circumstances where the

United States, if a private person, would

be liable to the claimant in accordance

with the law of the place where the act

or omission occurred.

28 U.S.C. 1346(b) (emphasis supplied). The district court

applied the law of the place where the act or omission

occurred, Puerto Rico, and reached the conclusion, affirmed

supra, that under Puerto Rico law the United States was

immune as a statutory employer.

Appellant concedes that he sued the United States

pursuant to the FTCA and that the FTCA mandates application

of local law. However, he argues: (1) the Longshore and

Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. 901

et seq., also applies to this case, as extended by the

Defense Bases Act, 42 U.S.C. 1651 et seq.; (2) the LHWCA

exclusive liability provision, 33 U.S.C. 905(a), entitles a

contractor to statutory employer immunity only if the

subcontractor actually fails to secure payment to the injured

-13-

worker; (3) the subcontractor here, Vigilantes, did not fail

to secure compensation payments for appellant; (4) therefore,

under the LHWCA, the United States is not immune from

appellant's suit for damages; and, (5) since the LHWCA is

federal law, it preempts the inconsistent PRWCA rule and thus

should have been applied by the district court.

Appellant's preemption argument presupposes that,

because his accident occurred on a naval base in Puerto Rico,

the Defense Bases Act, 42 U.S.C. 1651 et seq., applies,

mandating application of the Longshore and Harbor Workers'

Compensation Act. See 42 U.S.C. 1651(a).6 This

supposition may or may not be so. It can be argued that, for

6. 42 U.S.C. 1651 provides that:

(a) Except as herein modified, the
provisions of the Longshoremen's and
Harbor Workers' Compensation Act,
approved March 4, 1927 (44 Stat. 1424),
as amended, shall apply in respect to the
injury or death of any employee engaged
in any employment
(2) upon any lands occupied or used
by the United States for military or
naval purposes in any Territory or
possession outside the continental United
States (including the United States Naval
Operating Base, Guantanamo Bay, Cuba; and
the Canal Zone);
. . . .

Section 1651 also makes the LHWCA applicable to employees of
contractors and subcontractors on certain public works
projects outside the continental United States. 42 U.S.C.
1651(a)(3)-(a)(5). 42 U.S.C. 1651(b)(4) defines
"continental United States" as "the States and the District
of Columbia."

-14-

the narrow and specialized purposes of the Defense Bases Act,

Puerto Rico is not a "Territory or possession outside the

continental United States" as those terms are there intended

to be understood.7 We need not, however, decide this

7. Appellant asserts without analysis that bases in Puerto
Rico "obviously" fall within the definition of "any lands
occupied or used by the United States for military or naval
purposes in any Territory or possession outside the
continental United States." The question is not so simple,
however. The Defense Bases Act applies to bases in any
"territory," but that term is not defined by the Act nor has
appellant cited any cases interpreting it in that context.
As we have noted before:

The term "territory" does not have a
fixed and technical meaning accorded to
it in all circumstances, and thus Puerto
Rico may be found to be included within
one act whose coverage extends to
territories of the United States and
excluded from another. Americana of

Puerto Rico, Inc. v. Kaplus, 368 F.2d

431, 436 (3d Cir. 1966), cert. denied,

386 U.S. 943, 87 S.Ct. 977, 17 L.Ed.2d
874 (1967). "[W]hether Puerto Rico comes
within a given congressional act
applicable in terms to a 'territory,'
depends upon the character and aim of the
act." Puerto Rico v. The Shell Company,

302 U.S. 253, 258, 58 S.Ct. 167, 169, 82
L.Ed. 235 (1937).

Garcia v. Friesecke, 597 F.2d 284, 293 (1st Cir.), cert.

denied, 444 U.S. 940 (1979). Nor is it clear whether the

Defense Bases Act can apply concurrently with local
compensation acts. See 42 U.S.C. 1651(c) (making liability

of employer under Defense Bases Act "exclusive and in place
of all other liability of such employer . . . to his
employees (and their dependents) within the purview of this
chapter, under the workmen's compensation law of any State,
Territory, or other jurisdiction"); Flying Tiger Lines, Inc.

v. Landy, 370 F.2d 46, 51-52 (9th Cir. 1966).

In Royal Indemnity Co. v. Puerto Rico Cement Corp., 142

F.2d 237 (1st Cir.), cert. denied, 323 U.S. 756 (1944), this

court stated that the purpose of the Defense Bases Act "was

-15-

difficult question in order to resolve the present appeal.

Even assuming the Act applies, and appellant falls within it,

appellant cannot prevail. Hence, for purposes of this case

only and specifically without deciding the issue, we shall

assume that the Defense Bases Act applies to military bases

in Puerto Rico. We shall also assume, again solely for

purposes of argument and without actually deciding, that

appellant could show on the particular facts of his case that

he satisfied all other requirements of the Defense Bases Act

and the pertinent provisions of the LHWCA.8

to provide the same relief to outlying territories,
including . . . Puerto Rico, as the existing law affords
employees in the United States" and held that the Defense
Bases Act applied exclusively and in place of the PRWCA. Id.

at 239. How much of Royal Indemnity is still good law is

unclear given the comprehensive evolution since 1944 of the
law of federal and state compensation schemes and, in
particular, the subsequent amendment of 3(a) of the LHWCA,
upon which Royal Indemnity was based. See Simpson v.

Director, Office of Workers' Compensation Programs, 681 F.2d

81, 88 (1st Cir. 1982) (questioning continued vitality of
Royal Indemnity after Calbeck v. Travelers Insurance Co., 370

U.S. 114 (1962)), cert. denied sub nom. Bath Iron Works Corp.

v. Director, Office of Workers' Compensation Programs, 459

U.S. 1127 (1983); see generally Lusson v. Carter, 704 F.2d

646 (1st Cir. 1983); Garcia v. Friesecke, 597 F.2d 284; 4

Arthur Larson, The Law of Workmen's Compensation, 89.10-

.27(c) (1990).

8. Appellant has never applied for LHWCA benefits on the
ground of entitlement under the Defense Bases Act, and thus
it has never been determined by the Deputy Commissioner in
the applicable United States Department of Labor Compensation
District whether and to what extent he may in fact be
eligible for such benefits. See 42 U.S.C. 1653; 33 U.S.C.

939; 20 C.F.R. pt. 702; AFIA/CIGNA Worldwide v. Felkner,

930 F.2d 1111, 1112-14 (5th Cir.), cert. denied, 112 S. Ct.

297 (1991) (describing procedures for making claims under
LHWCA as extended by Defense Bases Act). On the other hand,

-16-

We proceed, therefore, on the supposition,

arguendo, that Vega-Mena's accident occurred within the

concurrent jurisdiction both of the Longshore and Harbor

Workers' Compensation Act and of the Puerto Rico Workers'

Compensation Act. See Sun Ship, Inc. v. Pennsylvania, 447

U.S. 715, 717-19 (1980) (reviewing history of concurrent

jurisdiction of state workers' compensation systems and

LHWCA). When both the LHWCA and a state act apply

concurrently, the injured worker is free to apply for

benefits under either system. Id. at 724. "When laborers

file claims under the LHWCA, they are compensated under

federal standards. And workers who commence their actions

under state law will generally be able to make up the

difference between state and federal benefit levels by

seeking relief under the Longshoremen's Act, if the latter

applies." Id.

That appellant could have applied (as we assume

arguendo) for benefits under the LHWCA, does not mean that

any tort claim he may have against a third party is a federal

cause of action. Though appellant's injury occurred on a

naval base, he has neither alleged nor does he or could he

argue that he has a federal maritime cause of action against

appellant has applied for, and has received, workmen's
compensation benefits under Puerto Rico law. As we have
already held, the United States is an immune statutory
employer under Puerto Rico law.

-17-

the United States. The LHWCA itself clearly creates no cause

of action against the United States as the allegedly

negligent third-party contractor. Griffis v. Gulf Coast Pre-

Stress Co., 850 F.2d 1090, 1091 (5th Cir. 1988); Ward v.

Norfolk Shipbuilding & Drydock Corp., 770 F. Supp. 1118, 1121

(E.D. Va. 1991). The only cause of action for negligence

against third parties expressly referred to in section 905 is

that against vessels pursuant to 33 U.S.C. 905(b).9 Hence

while section 905(a), and 33 U.S.C. 933, provide that the

LHWCA does not limit an injured worker's right to sue a third

party, those provisions do not create, nor do they purport in

any way to establish, the third party's liability for

negligence.10 The liability of a third party, other than a

9. 33 U.S.C. 905(b) establishes a cause of action against
vessels for negligence:

In the event of injury to a person
covered under this chapter caused by the
negligence of a vessel, then such person,
or anyone otherwise entitled to recover
damages by reason thereof, may bring an
action against such vessel as a third
party in accordance with the provisions
of section 933 of this title, . . . .

10. 33 U.S.C. 933(a) provides:

(a) Election of remedies If on

account of a disability or death for
which compensation is payable under this
chapter the person entitled to such
compensation determines that some person
other than the employer or a person or
persons in his employ is liable in
damages, he need not elect whether to
receive such compensation or to recover

-18-

vessel, must arise under some federal or state law other than

the LHWCA. Griffis, 850 F.2d at 1091; Ward, 770 F. Supp. at

1121-22. Here, the only cause of action against the United

States is based on Puerto Rico negligence law as made

applicable by the Federal Tort Claims Act. "[W]hen state law

creates a cause of action, the State is free to define the

defenses to that claim, including the defense of immunity,

unless, of course, the state rule is in conflict with federal

law." Ferri v. Ackerman, 444 U.S. 193, 198 (1979).

Therefore, unless the statutory employer immunity rule of the

PRWCA is in conflict with the LHWCA rule, in particular 33

U.S.C. 905(a), under the circumstances of this case, the

Puerto Rico defense to appellant's claim applies and, as held

above, the United States is immune from appellant's

negligence action.

After examining the precise scope of the federal

and Puerto Rico rules, and keeping in mind the Supreme

Court's admonition to avoid "seeking out conflicts between

federal and state regulation where none clearly exists,"

Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440,

446 (1960), we find no conflict in these circumstances

between the LHWCA's exclusive liability provision and the

Puerto Rico rule of statutory employer immunity. As

damages against such third person.

-19-

explained in Part II.A. supra, under Puerto Rico's workers'

compensation scheme all employers must insure their own

employees and, in return, their liability for their

employees' injuries is limited by 11 L.P.R.A. 21 to

workers' compensation payments. 11 L.P.R.A. 21 provides:

21. Exclusiveness of remedy When an

employer insures his workmen or employees
in accordance with this chapter, the
right herein established to obtain
compensation shall be the only remedy
against the employer, even in those cases
where maximum compensations and benefits
have been granted in accordance
thereof; . . . .

In shorthand, 11 L.P.R.A. 21 entitles complying employers

to "immunity" from damages actions by injured employees. In

addition, a contractor is secondarily liable for the

insurance premium payments for its subcontractor's employees

when the subcontractor is not properly insured. 11 L.P.R.A.

20. As interpreted by the Puerto Rico Supreme Court, this

mutual obligation entitles contractors to the same immunity

enjoyed by employers and so such contractors are deemed to be

"employers" for the purposes of 11 L.P.R.A. 21. They have

so-called "statutory employer immunity." This means that

such a contractor can invoke 11 L.P.R.A. 21 as a defense

against claims by his subcontractors' injured employees.

Under the LHWCA, as under the Puerto Rico statute,

an employer must "secure the payment to his employees of the

compensation payable" under the LHWCA, 33 U.S.C. 904(a),

-20-

and in exchange is liable to injured employees only to the

extent of the workers' compensation payments. 33 U.S.C.

905(a). In contrast to the PRWCA, however, the LHWCA

requires contractors to secure compensation for their

subcontractor's employees only if the subcontractors are

actually uninsured. 33 U.S.C. 904(a). The more limited

responsibility of contractors for their subcontractors'

employees is mirrored by the limited immunity for contractors

granted by 33 U.S.C. 905(a):

The liability of an employer prescribed
in section 904 of this title shall be
exclusive and in place of all other
liability of such employer to the
employee, . . . except that if an
employer fails to secure payment of
compensation as required by this chapter,
an injured employee . . . may elect to
claim compensation under this chapter, or
to maintain an action at law or in
admiralty for damages on account of such
injury or death. . . . For purposes of
this subsection, a contractor shall be
deemed the employer of a subcontractor's
employees only if the subcontractor fails
to secure the payment of compensation as
required by section 904 of this title.

Thus, a contractor is entitled to so-called "statutory

employer" immunity under section 905(a) only if the

contractor is compelled by section 904(a) to secure workers'

compensation for the subcontractor's employees because the

subcontractor fails to do so and the contractor actually does

secure the payment. Louviere v. Marathon Oil Co., 755 F.2d

428, 429-30 (5th Cir. 1985).

-21-

Clearly, then, the statutory employer immunity

provisions of the LHWCA and the PRWCA are different. Cf.

Garcia v. Friesecke, 597 F.2d 284, 293 (1st Cir.) (explaining

differences between Puerto Rico Supreme Court's

interpretation of PRWCA, which grants immunity to contractors

who require subcontractor to acquire insurance, and the

former 1st Circuit interpretation of the PRWCA, which did

not), cert. denied, 444 U.S. 940 (1979). It is far less

clear, however, that they are in "conflict." We think they

are not. As we decided supra, the United States is entitled

to immunity as an "employer" within the meaning of 11

L.P.R.A. 20 against a Puerto Rico negligence action brought

by this employee who was both insured, and has recovered

compensation, under Puerto Rico's Act. Even assuming the

United States would fail were it to try to invoke the

statutory employer immunity created by section 905(a),11

this shows only that the federal statute does not go so far

as Puerto Rico's to bar third-party actions by employees who

come within its own program. The LHWCA does not express

disapproval of a state's affording a different or wider

employer's immunity in the case of its own insureds.

11. Whether the United States would not be federally immune

is by no means clear on this record. To qualify for
immunity, the United States would have to show that (a)
Vigilantes failed to secure LHWCA compensation as required by
section 904; and (b) the United States itself secured the
payment of such compensation. The facts pertaining to these
issues were not developed below.

-22-

Conflict is lacking because, although section

905(a) does not give the United States immunity from

appellant's suit, neither does it take away the immunity

separately created by Puerto Rico's workmen's compensation

laws. The last sentence of section 905(a) seems crucial:

"For purposes of this subsection, a contractor shall be

deemed the employer of a subcontractor's employees only if

the subcontractor fails to secure the payment of compensation

as required by section 904 of this title." 33 U.S.C. 905(a)

(emphasis added). On its face, section 905(a) limits the

extent of immunity for contractors only "for purposes of this

subsection." That is, a contractor cannot invoke the first

sentence of section 905(a) which limits the liability of

an "employer" who complies with 33 U.S.C. 904(a) as a

shield against liability to employees of a subcontractor

unless the subcontractor actually fails to secure

compensation. Section 905(a) does not refer to or otherwise

implicate immunities granted by other federal or state laws.

In this case, the United States did not invoke section 905(a)

as a defense against appellant's action. Instead, it found

shelter in a Puerto Rico statute, 11 L.P.R.A. 21. So,

while section 905(a) does not confer immunity upon the United

States here, neither does it facially prohibit the

application of immunity created by Puerto Rico law.

-23-

Moreover, the legislative history of section 905(a)

contains no evidence that Congress intended to preempt state-

law rules of statutory employer immunity when the LHWCA and

state acts have concurrent jurisdiction. Congress amended

sections 4(a) and 5(a) of the LHWCA, 33 U.S.C. 904(a),

905(a), to legislatively overturn the Supreme Court's

decision in Washington Metropolitan Area Transit Auth. v.

Johnson, 467 U.S. 925 (1984). See H.R. Conf. Rep. No. 1027,

98th Cong., 2d Sess. 24 (1984), reprinted in 1984

U.S.C.C.A.N. 2734, 2774;12 Griffis, 850 F.2d at 1091;

12. The relevant portion of the Joint Explanatory Statement
of the Committee of Conference reads:

The Senate bill addresses several
issues growing out of the liability of
employers and third parties for damages
or compensation. . . .
The Conference substitute deals with
the issues of overlapping and indirect
liability and of exclusive remedy as
follows:
. . . .
Third, the substitute addresses that
issue of immunity in the situation where
an employee of a subcontractor brings a
third party action against the contractor
for a work-related injury. The Supreme
Court in Washington Metropolitan Area

Transit Authority v. Johnson, 104 S.Ct.

2827 (1984), changed key components of
what had widely been regarded as the
proper rules governing contractor and
subcontractor liability and immunity
under the Longshoremen's and Harbor

Workers' Compensation Act.

The Conference substitute, in
disapproving WMATA v. Johnson, achieves

the following: First, the obligation of
the contractor to secure compensation for

-24-

Garvin v. Alumax of South Carolina, Inc., 787 F.2d 910, 916

(4th Cir.), cert. denied, 479 U.S. 914 (1986). The Supreme

Court in Washington Metropolitan Area Transit had held that,

under section 5(a) before it was amended in 1984, contractors

were entitled to immunity as "employers" so long as they had

not defaulted on their obligation under section 4(a) to

the employee of the subcontractor is a
contingent one, which is triggered only
upon the failure of the subcontractor to
secure compensation for its own
employees. Second, the contractor
remains amendable [sic] to suit by its
subcontractors' employees in those
instances where the subcontractor-
employer has fulfilled its statutory
obligation to secure compensation for its
employees. Third, however, where the
subcontractor defaults in securing
compensation, thus triggering the
contractor's obligation, and the latter
fulfills that obligation, the contractor
is deemed an "employer" for purposes of

section 5(a) and therefore entitled to

immunity from suit by the subcontractor's
employees. Fourth, if the contractor
utilizes a "wrap-up" insurance policy to
provide insurance coverage for the
benefit for satisfying the
subcontractor's primary obligation to
secure compensation, the contractor still
remains amenable to suit by employees of
the subcontractor; the contractor does
not enjoy the immunity afforded by

Section 5(a) of the Act.

. . . WMATA, the conferees believe,

does not comport with the legislative
intent of the Act nor its interpretation
from 1927 to 1983. The case should not
have any precedential effect.

H.R. Conf. Rep. No. 1027, 98th Cong., 2d Sess. 23-24 (1984),
reprinted in 1984 U.S.C.C.A.N. 2734, 2773-74 (emphasis

added).

-25-

secure back-up compensation for subcontractor employees,

regardless of whether or not the subcontractor actually

failed to secure compensation for its own employees. 467

U.S. at 936-40. Three months after the Court issued

Washington Metropolitan Area Transit, Congress amended

sections 4(a) and 5(a) to narrow the scope of section 5(a)

immunity by making it available to contractors only where the

subcontractor defaults in securing compensation and the

contractor is obliged by the amended section 4(a) to secure

it instead. See Longshore and Harbor Workers' Compensation

Act Amendments of 1984, Pub. L. No. 98-426, 4, 98 Stat.

1639, 1641 (1984).13 We find no evidence in the

13. That amendment provided:

Sec. 4. (a) Section 4(a) is amended to
read as follows:
"Sec. 4. (a) Every employer shall be
liable for and shall secure the payment
to his employees of the compensation
payable under sections 7, 8, and 9. In
the case of an employer who is a
subcontractor, only if such subcontractor
fails to secure the payment of
compensation shall the contractor be
liable for and be required to secure the
payment of compensation. A subcontractor
shall not be deemed to have failed to
secure the payment of compensation if the
contractor has provided insurance for
such compensation for the benefit of the
subcontractor.".
(b) Section 5(a) is amended by
adding at the end thereof the following
new sentence: "For purposes of this
subsection, a contractor shall be deemed
the employer of a subcontractor's
employees only if the subcontractor fails

-26-

legislative history, however, of an intent to supplant all

state-law statutory employer immunity doctrines where the

LHWCA and state compensation schemes have concurrent

jurisdiction. See Garvin, 787 F.2d at 916-17. Congress

expressly stated that the amendment's purpose was to change

the rules governing "immunity under the Longshoremen's and

Harbor Workers' Compensation Act," the "immunity afforded by

Section 5(a) of the Act," and the definition of "'employer'

for purposes of section 5(a)." Congress did not mention

state-created immunity or state law workers' compensation

laws. Absent such evidence, we see no reason to find that

Congress intended such a sweeping preemption of state

workers' compensation laws, a change that would contradict

the general presumption that the LHWCA "supplements, rather

than supplants, state compensation law" where the two

overlap. Sun Ship, 447 U.S. at 720. Because neither the

text nor legislative history of section 905(a) support

appellant's contention that it conflicts with Puerto Rico law

in this situation, we find no preemption and thus affirm the

district court's application of Puerto Rico workers'

compensation law without regard for the LHWCA.

to secure the payment of compensation as
required by section 4.".

Pub. L. No. 98-426, 4, 98 Stat. 1639, 1641 (1984).

-27-

Our holding today is consistent with the decision

of the Fourth Circuit in Garvin v. Alumax of South Carolina,

Inc., 787 F.2d 910 (4th Cir.), cert. denied, 479 U.S. 914

(1986), which held that section 905(a) does not conflict

with, and hence does not preempt, the statutory employer rule

of South Carolina workers' compensation law, when both

regimes apply concurrently and the injured worker brings a

common-law negligence claim against a contractor. The Garvin

court found that a contractor was entitled to immunity under

South Carolina law and was not entitled to the immunity

extended by section 905(a), as amended in 1984.

There is nothing in that amendment or its
legislative history, however, to indicate
a congressional intention to restrict the
application of state created immunity of
contractors in situations in which the
state statute traditionally had been
applied.
It was necessary, of course, for the
Congress in the LHWCA to deal in some
fashion with employer immunity. That
statute has exclusive application in the
District of Columbia and to most injuries
suffered on the navigable waters of the
United States. In those areas, the
Congress was free to determine for itself
under what circumstances a general
contractor would be immune from tort
actions by employees of a subcontractor,
but nothing done in the Congress suggests
that it intended to modify immunities
provided general contractors by state
workmen's compensation laws, when those
laws are applicable. . . .
The South Carolina rule of immunity
of a contractor in the position of
[defendant] is different from that under
the LHWCA, but not in conflict with it,
for Congress has not purported to

-28-

prescribe the immunity rules to be
applied by states in actions brought upon
state law claims.

Id. at 916-17. Because plaintiff had a state-law cause of

action, the LHWCA immunity rule did not apply and hence did

not conflict with the South Carolina rule. Id. Similarly,

the Virginia Supreme Court held that where both the LHWCA and

Virginia workers' compensation act apply to an injured worker

who brings a state-law negligence suit against a contractor,

the Virginia statutory employer immunity rule, which is also

essentially the same as Puerto Rico's, is not preempted by

section 905(a). McBride v. Metric Constructors, Inc., 239

Va. 138, 387 S.E.2d 780 (1990).

We recognize that under significantly different

circumstances the question of whether the LHWCA preempts

state-law defenses of statutory employer immunity might have

a different answer. See, e.g., Gates v. Shell Oil, 812 F.2d

1509, 1513-14 (5th Cir.), cert. denied, 494 U.S. 1017 (1990)

(holding that the Louisiana statutory employer rule is

inapplicable to a federal statutory claim under the Outer

Continental Shelf Lands Act by injured offshore worker

because it is "inconsistent," within meaning of 43 U.S.C.

1333, with the federal LHWCA rule); Ward v. Norfolk

Shipbuilding & Drydock Corp., 770 F. Supp. at 1121-22

(applying LHWCA statutory employer rule instead of state-law

rule where injured worker had a "general [federal] maritime

-29-

negligence cause of action" against a contractor); Kramer v.

Bouchard Transp. Co., 741 F. Supp. 1023, 1025-26 (E.D.N.Y.

1990) (applying federal rule where LHWCA bar on indemnity

actions between vessel owner and employer, 33 U.S.C.

905(b), conflicted with state U.C.C. rule); see also Lewis v.

Modular Quarters, 487 U.S. 1226, 1226-27 (1988) (denying

certiorari to 508 So. 2d 975 (La. 1987)) (White, J.,

dissenting, arguing that Supreme Court should have granted

certiorari to settle the question whether the LHWCA preempts

state-law statutory employer immunity rules). But the above

cases are all factually distinguishable from ours, which fits

squarely within the rules of Garvin and McBride.

III.
III.

In summary, (1) the district court properly found

that, under Puerto Rico law, appellee United States is immune

from appellant's negligence action; and (2) for purposes of

immunity the district court properly chose to apply Puerto

Rico law, instead of section 905(a) of the Longshore and

Harbor Workers' Compensation Act, because under the facts of

this case the federal act does not preempt the Puerto Rico

statutory employer doctrine. We affirm the grant of summary

judgment for appellee United States.

Affirmed. No costs.

-30-